The opinion of the court was delivered by
Nicholls, C. J.
On the 4th of June, 1893, the plaintiff by act before Choate, notary public, sold to Warren H. Moise, certain property in the «ity of New Orleans, described in the act of sale. The price of the *2017 property was ten thousand seven hundred and -fifty dollars, of which six thousand dollars were paid cash; the balance of the price being represented by three promissory notes of the purchaser to the order of, and by himself endorsed, dated Oct. 1st, 1892, each for the sum of fourteen hundred and sixteen dollars and sixty c^nts, maturing respectively in one, two, and three years after date with eight per cent, per annum interest thereon from date until paid. These notes were as to their payment secured by special mortgage and vendor’s privilege on the property sold, with the clause “de non alienando”. This act was duly re- ■ corded.
On the 2nd day of February, 1894, Warren IT. Moise, the declared purchaser in the above act, appeared before Choate, notary public, and two witnesses and, after reciting that he had on the 14th of June, 1898, by act before' Choate, purchased the property described in that act, in his own name declared that as a matter of fact, and truth, the said property was purchased by him for the account of, and as the property of Warren M. Guyol, Louise H. Guyol, Emily M. Guyol, Laura M. Guyol, and Louis O. Guyol, of whom he, appearer, was the tutor.
James O. Moise and E; Evariste Moise, intervened in said act declaring that as relatives of said named minors they were consulted by Warren H. Moise about the advisability of purchasing the property described, for said minors, and they advised the same and they believed the declarations of Warren TI. Moise to be correct and true. ■ This act was recorded in the conveyance office of the Parish of Orleans, on the 7th of February, 1894. On the assessment rolls of the Fourth District ofTthe city of New Orleans for the year 1894, appears the following extract from the assessment of property in Square No. 222, Prytania and St. Charles, ITarmony and Pleasant.

On the 29th of June, 1895, the property so assessed'seems to'have been offered at tax sale for taxes of 1894, and adjudicated to J. A. Reinach.
*2018 On September 4th, 1895, the following' entry was made in the books 'of the conveyance of the.city of New Orleans.
. Office of the State .Tax Collector, Fourth District (which comprises the Fourth Municipal District of the-city of New Orleans).
New Orleans, June, 1895.
Reeeivedfrom Mr. J. A. Reinach, the sum of seventy-six and 35-100 dollars, the same being price of adjudication of the property described below, and assessed in the name of Warren II. Moise, and George O. Preot, notary public, is authorized to pass an act of sale to the said J. A. Reinach in accordance with law.
(Signed) W. T. Patton, Tax Collector.
Per A. Jones, Dy.
Dates advertised, May 25, June 4,11, 18, 25, 29,1895.
Date adjudicated, June 29, 1895.

Description of Property.

Moise, Warren II. — State tax of 1894, $51. Orleans Levee District tax, $8.50. Total, $54.90.
Description of Property. — A certain lot of ground and improvements thereon, in the Fourth District of the city of New Orleans, in the square bounded by Prytania, Pleasant, St. Charles and Harmony streets, designated as Lot. No. —, in square No. 222; said lot measures 60 feet on Prytania street, by a depth of 150 feet. The portion sold being the 57 feet nearest Pleasant street”.
On the 4th of June, 1896, the following transfer was made to E. E. Moise:
“I hereby transfer1 this adjudication to E. E. Moise, and authorize the making of the deed to him, as I bought for his account.” New Orleans, June 4, 1896.
(Signed) Jacob A. Reinach.
On the 22nd October, 1896, a deed of sale was passed between Geo. C. Preot, then collector of the Fourth District of New Orleans, and E. Evariste Moise, in which recitals were made by the former of the various steps taken in the matter of the enforcement of the property assessed in the name of Warren H. Moise, as if Preot, himself, had ■been the tax collector at the jdato of the adjudication-
By that deed the property therein described is transferred by the said *2019 Georce O. Preot, tax collector, to E. E. Moise, as having been adjudicated on the 29th of June, 1895, to J. A. Reinach “for account of E. E. Moise,” and “E. E. Moise” accepted the property “with the right to be put into actual possession thereof by order of any competent jurisdiction; the said property being redeemable at any time, for the space of ■one year beginning on the date that the said act or deed is filed in the •conveyance -office, by paying the price paid by the purchaser, with twenty per cent and costs added.”
The act was recorded on the 22nd October, 1896.
On the 17th August, 1897, the plaintiff, in presence of witnesses, tendered to E. E. Moise the sum of two hundred and fifty dollars, .simultaneously handing him the following letter:
“Dear Sir — In order that I may get my mortgage in better shape on the property sold by me to W. H. Moise, being the property situated on Prytania street, between Louisiana avenue and Toledano street, and which you claim to have bought at tax sale for the taxes for the year 1894, and which property you now claim as belonging to you, I desire to reimburse you all money which you may have paid at the tax sale, and for taxes paid by you since on the property, together with the interest, penalties, costs, or other charges, including the twenty per cent, penalty, with a view of redeeming the property from you and restoring it to its lawful owners.
“I am now prepared to make you a legal tender of such amount as may be due, or which you may claim due, for the purpose of making-such redemption and restoring the property to its lawful owners, to the end that my mortgage may remain unimpaired.
“This offer and tender is made without, in any manner, intending to prejudice my existing- rights, or without intending to recognize the validity of the title under which you claim, in any manner, shape, or form.”
E. E. Moise refused to receive the money, declining the tender.
On the 23rd of August, 1897, the plaintiff applied for and obtained an order from the Civil District Court for the seizure and sale of the property mortgaged to him by Warren H. Moise. The property was seized and on the-day of-sold to the plaintiff, W. G. Taylor, at the sheriff’s sale.
In his petition for .executory process the plaintiff, Taylor, referred to the declaration made by Warren H. Moise in the act of February, 1894, to the effect that although he had taken the title of the property which *2020 he had purchased from Taylor in his own name, he had bought it in. reality for his wards, the Guyol minors. ITe also averred that Warren H. Moise had left the State permanently, and that these minors were: without a tutor. In view of these facts, he prayed that the executory proceedings be conducted contradictorily with a curator ad hoc, appointed to represent Warren H. Moise, and a tutor ad ho,c to represent, the minors. This was accordingly done, and the property went to sale under these circumstances.
After Taylor had become the purchaser of the property, he suggested that fact to the District Court, and that he had complied with all his obligations under the adjudication to him; that he was entitled to be placed in possession, and that he had frequently requested the sheriff to place him in possession, and he had illegally and wrongfully refused to do so.
Upon these suggestions the court ruled the sheriff to show cause why he should not complete the adjudication by placing the purchaser in possession.
In answer to this rule, the sheriff averred that the occupant of the-property had exhibited to him a tax title, apparently valid in form, under which he claimed possession; that he had taken proceedings, against E. E. Moise, the holder of the tax title, to show cause why he should not deliver the property to him; that he could not ignore this, tax title, unless specially ordered so to do; that he was .ready to execute-any order the court might render in the premises.
In the rule taken out by the sheriff on E. E. Moise, to show cause why he should not deliver the property to him, the latter answered that he admitted he was in possession, as owner, of the property. That said property was sold on the 29th of June, 1895, by Patton, tax collector, to J. A. Reinach, and the proces verbal of sale was registered in the-office of conveyances on the 4th of September, 1895; that on June 6th, 1896, Reinach transferred his rights therein to him, which was also registered on June 6th, 1896; that in satisfaction thereof an authentic act of sale was made, by the tax collector, of said property, and the legal effect thereof was to cancel the. mortgage declared on by Taylor; that he could not be injured and divested in the manner attempted in that proceeding; that if this exception was overruled, and not otherwise, he averred the proceeding taken out was irregular and void, and of no effect, to vest any title in W. G. Taylor, and he, respondent, having possessed for more than a year, he could not be evicted by a possessory *2021 action, and no petitory action could be brought by the sheriff in the form of a rule, and Taylor having judicially averred and recognized in his petition third possessors,, could not proceed against them in the manner attempted by executory process, but only by the regular hypothe■eary action, and all of his pretended proceedings (against which he protested at the time before the sale to Taylor) were null and void.
He prayed that the demand of the sheriff be rejected at his costs.
The plaintiff, Taylor, moved the court to consolidate his rule against the sheriff with the sheriff’s rule against E. E. Moise, but the court refused to do so.
On the trial of the rule against Moise, it was dismissed as of non-suit. The present action was then brought.
The evidence showed that, after the purchase of the property from Taylor, the Guyol minors occupied the residence under the charge of their aunts; that they occupied it at the time of the tax sale, and still ■do so. It is claimed that the property was leased from E. E. Moise, by one of the aunts, and that the taxes, repairs and insurance bills have "been paid by monies received from her as lessee. The evidence shows that the property, since the tax sale, has been assessed in the name of the Guyols; that the tax bills have been made out and receipted as monies received from them, though paid by E. E. Moise. One of these tax receipts shows a subrogation by the tax collector, to Moise, to the rights of the State.
Looking at matters, after they have shaped themselves, assisted by the side light thrown upon the situation by the testimony as to the relations of all the parties, we have no difficulty in reaching a conclusion as to the reasons which controlled, and the purposes and motives which actuated E. E. Moise in this matter. It is established that he is a near relative of the Guyol children, and that they and their aunts hold him, to-day, in great affection. Everything goes to show that any testimony (whether drawn from him or others) which would place him in the attitude of having acted in opposition to their interests, or as a ■spoilator of their property, is without foundation. We are satisfied that what he has done has been done with a view to their protection, but in manner such as †0 attempt to keep him free from legal liability towards them. His whole course has been directed towards holding quoad them, and quoad Taylor, the position of a “third person,” with the ultimate object of making his acts finally enure, as by future gratuitous action on his part to the benefit of his relatives.
*2022 The situation of the children was peculiar and distressing. They were without father or mother. Their uncle had been appointed their. dative tutor. As such he had received some seven or eight thousand, dollars of their patrimony. This money, without the advice of a family meeting, he invested in the property purchased from Taylor,, taking the title, however, in his own name, not theirs.
A large portion of the price was on credit notes,, secured as to payment by special mortgage and vendor’s privilege. The purchase was-made upon reliance upon funds being received from an insurance-policy upon the life of their father, sufficient in amount to pay off the-deferred instalments. It became evident that, from some cause, these notes would not be paid, and that a constantly increasing interest debt would sweep away the property. Under such circumstances the tutor made a disclaimer of being its real owner, and placed of record that he-had purchased the same for his wards.
True this would not of itself convey title to them, for they could (if it should be to their interest so to do) repudiate the action of the tutor and look to him personally for recourse. None the less the disclaimer- and declaration would be a standing barrier as between them and their tutor from any adverse claim of ownership by him in the future, should matters so develop later as to make it to their interest to take the title.. It was under this condition of things, and from this condition of things, that the present situation has arisen. E. E. Moise reasoned he owed no-legal duty to Taylor, the holder of the mortgage on the property, and that it was for him to guard his own interests; that he owed no “legal”' duty to his relatives, the G-uyol children; that he was not charged with the obligation of furnishing them with money to pay and keep down taxes; that if taxes should fall due and the property be sold to pay them, it would be no legal fault of his; that he was a third party, as. free to buy the property at a tax sale as any other person; that if he-should do so, the course he would pursue in regard to the ultimate disposition of it was a matter which no one could legally question.
We think that, moved by these considerations, Moise took no steps to-pay the tax of 1894; he saw in its enforcement a possible method by which the Warren II. Moise title could be displaced and the G-uyol children made to benefit. He permitted matters to drift to a tax sale, intending to purchase the property and take the title in his own name. Instead of doing this immediately at the sale, he caused one J. A> *2023 Reinach to' appeal- as the adjudicatee and pay the price of adjudication, with the understanding that the title should be finally placed in him. This was done through an assignment of Reinach’s rights under the adjudicaton to him, followed by a deed of the property to him from the tax collector.
We think everything- indicates a fixed determination on the part of Moise to place matters in such shape as to enable him to claim and urge throughout that he was a third party in the whole transaction; that he was acting as agent or negotiorum gestor neither for Warren H. Moise nor for the Guyol children, but that from a legal standpoint he was acting in his own behalf, not theirs, let the motives for his conduct be what they might. He was willing to be of service finally to the children, but unwilling to place himself in any position by reason of which they could hold him to legal liability.
The appearance of Reinach, a third person, as the original adjudicatee, is one fact in support of this, and another is that just so soon as Moise himself took title, he arranged with one of the aunts of the children that she should appear as his lessee,, so that the monies which would be expended thereafter for taxes, repairs, and insurance upon the property, would appear as his monies received by him by way of rent, and not the minors’ money.
The evidence shows that monies came from different outside quarters, which were applied in this way. The money which went to pay Reinach, as the consideration of the transfer of the title of the property to Moise, came in the shape of a draft or check on New York from an uncle of the minors in Georgia, made out for the exact price of the transfer, and made payable to the order of E. E. Moise. The claim is made that this draft was money advanced by this uncle to his sister (the aunt of the minors), to assist her in paying her rent to the defendant; that the money it represented was really the latter’s money and applied by him to making the purchase. A large part of the brief of counsel is made up in discussion as to whether the defendant owed any duty towards Taylor, the mortgage creditor; whether‘the defendant had not purposely kept from him a knowledge of the tax proceedings before and after the sale; whether he had not intentionally and designedly lulled him into security as to payment of his mortgage, so as to get the benefit of the running out of the period for the redemption of the property. *
The conclusion we have reached on one branch of this case renders *2024 unnecessary any discussion or decision upon this. The plaintiff made a tender to the defendant on the 17th of August, 1897, to re-imburse him for all outlays made by him in the premises, with interest, etc. It is' admitted 'that the tender was good if not too late.
We are of the opinion that it was not too late; that the period for redemption commences to' run from the day when the deed executed by the tax collector to the purchaser is filed for record in the conveyance office in the parish where the property is situated. The statement shown to have been filed in this case in the conveyance office of the Parish of Orleans, on the 4th day of September, 1895, was not the instrument the law 'required to be filed to start the running of the period- for redemption. The tender made by the plaintiff was sufficient. Its rejection by the defendant divested him of the right to call in question the legality or regularity of any subsequent proceedings which might be taken out by the plaintiff in enforcement of his mortgage on the property. The defendant insists that he has been in possession for more than a year, that under his right of jiossession he can call in question the regularity of the proceedings in the executory proces; that plaintiff has recognized the Guyol children as “third possessors” and plaintiff was bound to proceed in the enforcement of his mortgage by an action strictly hypothecary. We do not think that the plaintiff has ever recognized the Guyol minors as being third possessors, or that he proceeded against them as such; he made them ¿parties to the mortgage proceeding not as holding a derivative title to the property, under Warren II. Moise, but as being possibly the original purchasers of the property through their tutor.
In view of the uncertainty as to where the real title was, he took the precaution of making all persons who might be so held — parties, in order to cut off subsequent pretentions. In respect to the possession of the property which the defendant has claimed to have since the tax sale, we think the position which a purchaser, at tax sale, occupies during the period of redemption is rather that of an occupant, than a possessor, in the strict sense of the term
Wo think the exercise, by the plaintiff, of the right of redemption, divested the defendant of rights of ownership in the property, and that he can not successfully resist in this suit — plaintiff’s claim of ownership and right to possession.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.