Bursha vs. Lane.

No. 13,727.

JOHN A. BURSHA, HUSBAND, VS. MRS. SARAH C. LANE, WIFE.

SYLLABUS.

1. Where, in an action for separation from bed and board on the ground of abandonment, "the three reiterated summonses" required by Article 145 of the Civil Code are issued and served, and, after answer filed by the defendant, there is a trial in which testimony is offered, arguments presented, and the case is submitted, the judge may dismiss the suit, or he may render the judgment mentioned in the article, sentencing the defendant "to comply with such request," or he may, perhaps, make some other tentative or interlocutory order, but he cannot, at that stage of the case, render a definitive judgment of separation.

2. If he renders the judgment mentioned in the article, and there is a subsequent compliance with said article with regard to the notification of said judgment, there is no cause of complaint because the plaintiff, after such notification, enters a default and proves up the same after setting the case down for confirmation of the default.

3. Although, under C. C. 157, where there is a judgment of separation from bed and board, the judge, with the advice of a family meeting, may award the custody of the minor child to the party cast, such disposition, if made only because of the tender age of the child, should be regarded as temporary in character, and should be so qualified.

A    PPEAL from the Twenty-third Judicial District, Parish of St. Mary—*Allen, J.*

*Henry Mayer* for Plaintiff, Appellant.

*Mentz & Borah* for Defendant,, Appellee.

. STATEMENT OF THE CASE.

The opinion of the court was delivered by

MONROE, J.   Plaintiff sues his wife for separation from bed and board and for the custody of their minor child. He charges abandonment and alleges that his wife, with the minor, is living with her parents in the Parish of St. Mary, and that he, for the past nine or ten years, has been at Calumet Plantation, about four miles distant. He prays that his wife be summoned to return to the matrimonial domicile,

Bursha vs. Lane.

and that after due proceedings there be judgment declaring a separation, etc., and awarding him the permanent custody of the child. The petition was filed March 10th, 1899, and the judge ordered that the defendant be authorized to defend, and that the summonses issue as prayed for. Upon March 11th, 1899, citation was served in the usual form and the defendant was also summoned to return to her matrimonial domicile, in the Parish of St. Mary, as prayed for in plaintiff's petition. Similar summonses were served upon April 12th and May 10th, 1899, respectively. A judgment by default appears to have been entered upon June 22nd, and on June 23d, 1899, the defendant answered, admitting the marriage and the birth of the child, but otherwise denying the allegations of the petition. This was followed by a supplemental answer, filed October 10th, 1899, in which the defendant denied that she had ever been summoned to return to any matrimonial domicile to which the plaintiff could either invite, or summon her, and alleged that whilst the "three papers which the clerk of the court issued were so issued," the plaintiff resided in the town of Franklin, in a boarding house which was not a fit place for her to live in or for him to invite her to, as it was not a reputable house and was not visited by reputable people. And she prayed that her failure to go to said house be held to be justified and that plaintiff's suit be dismissed.

It appears that, upon the day upon which this supplemental answer was filed, or the following day, October 11th, 1899, evidence in the case was adduced and closed; upon October 18th, the case was argued and submitted; upon November 22nd, there was judgment, as appears from the minute entries, "requiring the wife to comply with the order of the court, and said judgment to be served upon defendant three consecutive times from month to month." A motion for new trial was filed on behalf of defendant November 23rd, 1899, and overruled January 29th, 1900; and, on February 2nd, 1900, the judgment appears to have been signed, ordering the defendant "to return to the matrimonial domicile in accordance with Article 145 of the Civil Code, etc., and in accordance with previous summonses, served upon her," and directing that notification of said judgment be given and served upon her from month to month, "for three times consecutively." Notices of said judgment were accordingly served upon the defendant upon February 8th, March 7th and April 4th, 1900, respectively. Thereafter, upon May 23rd, 1900, judgment by default was entered, and the minute entry of May 30th, 1900, reads, "Above case, fixed for to-day for confirm-

ation of default, taken up, evidence adduced, and case submitted." This was followed by a judgment, rendered June 14th, 1900, in favor of the plaintiff, upon the demand for separation from bed and board, but awarding the custody of the child to the mother, pending the convocation of a family meeting to advise upon the subject.

Upon October 16th, 1900, the plaintiff's counsel asked that this judgment be signed, but defendant's counsel objected, and the matter went over and said judgment was read and signed October 23rd, 1900. In the meanwhile, agreeably to an order of the court made October 10th, 1900, a family meeting had been called which, upon October 20th, recommended that defendant "have the guardianship and possession of the child," and the proceedings and recommendation were approved and homologated by judgment of date October 22nd, 1900. Thereafter, the plaintiff appealed from said judgments last mentioned, i. e., the judgment on the merits and the judgment of homologation. And the defendant has filed an answer to the appeal, asking that the judgment on the merits be reversed and that plaintiff's suit be dismissed, or, if said judgment be affirmed as to the separation, that it also be affirmed as to the custody of the child. Upon the trial, which took place October 11th, 1899, several witnesses were examined on behalf of the plaintiff and two witnesses were examined on behalf of the defendant.

The substance of this testimony is about as follows, to-wit:

That the plaintiff is an honest, sober, and industrious man, a good carpenter and mechanic, who can support his wife and child with ease, and who owns a place two miles, more or less, from the residence of the parents of the defendant, with a comfortable dwelling and other houses upon it. That, during the year 1899, from January until the date of the trial, in October, he spent most of his time on his place, but visited Franklin from time to time, and more frequently after the filing of this suit, in March of that year, and that during his visits he put up at a cheap boarding house where a sister of his first wife was employed, where a little boy whom he had brought up was staying, and where it seems that his first wife, herself, had stayed. It further appears that this boarding house was kept by a poor woman, who had a worthless husband and several children, and among the latter a girl who had been betrayed and was *enceinte* during the early part of the year 1899 and gave birth to a child in April, or May. Beyond the fact that this girl was in her mother's house during the time that the plaintiff was frequenting the house as a boarder there is nothing to connect him with

her in any way. And there is both positive and circumstantial evidence to the effect that there were no relations between them.

## OPINION.

The plaintiff complains of so much of the judgment as awards the custody of the child to the defendant, whilst the defendant, answering the appeal, prays that the judgment of separation from bed and board be reversed, and the suit dismissed; or, in the alternative, that the whole judgment be affirmed. We will, under the circumstances, first consider the claims of the defendant.

The defendant's counsel say: "It is perfectly plain that the evidence of abandonment introduced by the plaintiff upon the trial of the case on October 11th, 1899, did not meet the requirements of the Civil Code, Article 145, which requires, first, three notifications from the court, as well as a judgment sentencing the defendant to comply, with three monthly, successive, notifications of the judgment. See Perkins vs. Potter, 8 Ann. 14; Biènvenue vs. Buisson, 14 Ann. 387; Merrill vs. Flint, 28 Ann. 194; Champon vs. Champon, 40 Ann. 31. But the court rendered an interlocutory judgment sentencing the defendant to return, instead of deciding the case itself. The parties had respectively filed petition and answer, had fixed their case for trial, had adduced their testimony, and had argued and submitted their case, and were mutually demanding a definitive judgment. Upon this point, we respectfully submit that it is not within the province of the trial judge, when a case is submitted for final judgment, to render a mere interlocutory judgment, least of all, in a suit which seeks to dissolve the family relation, should the judge in any manner assist this dissolution by granting an order which the plaintiff has never cared to ask for; he should have passed on the case as it was presented to him by the litigants, or he should have dismissed the action."

Prior to the trial to which the counsel refer, there had been three reiterated summonses served upon the defendant directing her to return to the matrimonial domicile, followed by the entry of a judgment by default, which, in turn, was set aside by the filing of an answer and supplemental answer. And in that condition of the case, the parties went to trial, and testimony was taken (of which the substance has been stated) with a view, so far as the defendant was concerned, of showing that there was no matrimonial domicile to which she could properly return. The judge *a quo* was evidently of the

opinion that this testimony failed of its purpose and he rendered judgment sentencing the defendant to comply with the direction to return, etc.

We quite agree with our learned brother as to the conclusions reached and the action taken by him. The plaintiff had a domicile which was open to the defendant and to which she was invited, and the introduction of the boarding house and its inmates into the case, proved to be irrelevant and unnecessary. The plaintiff was merely a transient boarder, and the theory that he was inviting his wife there, as to the matrimonial domicile, when he had a comfortable residence in which he was then living, is without support. As to the character of the boarding house, beyond the fact that the poor woman who kept it seems to have been having a hard time in her effort to support a worthless husband and a number of children, and that her daughter had been betrayed, under promise of marriage, by a man who had disappeared, there is nothing in the record against it. The plaintiff had, apparently, known the people before and we can discover no sufficient reason for his not boarding there during his visits to Franklin, or for criticising him for having done so. Article 145 of the Civil Code, in so far as it is pertinent to this point, reads: "The abandonment  *  *  *  must be made to appear by three successive summonses, made,  *  *  *  from month to month, directing him or her to return to the place of matrimonial domicile, and followed by a judgment which has sentenced him or her to comply with such request, together with a notification of the said judgment, given him or her from month to month, for three times successively." Upon the 11th of October, 1899, the "three reiterated summonses" having been served, and the judge, having heard whatever testimony the parties thought fit to offer at that stage of the case, the only thing that he could do was either to dismiss the suit, if he found from the evidence that the defendant had not abandoned the plaintiff, or that the plaintiff had provided no matrimonial domicile to which the defendant could return; or else, to render the judgment, which he, in fact, rendered, sentencing the defendant to comply with the summonses which had been served upon her. And, considering the evidence presented to him, the only *proper* course for him to pursue was to render the judgment which is now before us for review. There is nothing to the contrary in the cases cited in the brief of counsel, or elsewhere in our jurisprudence, so far as we are informed.

The suggestion that the judge ought not to have rendered the judg-

ment sentencing the defendant to return, etc., because it was not specifically prayed for, is without force. The prayer of the petition is "* * * that she be summoned to return to the matrimonial domicile, according to law; that after hearing, citation, and proper summonses, as required by law, petitioner do have judgment * * * decreeing a separation from bed and board, looking finally to a divorce; that he be decreed the permanent custody and keeping of his minor child, John Bursha, for costs and for general relief." Considering that the judgment in question was but a form of summons provided by law, as an additional step in the proceedings required to reach the final judgment prayed for, we think it was abundantly justified by the prayer as made. Moreover, no such objection was made in the lower court, although it ought to have been known to the defendant that the definitive judgment which the counsel say they were demanding could by no possibility have been rendered unless the judgment in question had previously been rendered and the defendant had been notified thereof from month to month for three months.

It is said that the course subsequently pursued by the plaintiff, and by the judge *a quo,* was irregular and unauthorized, and that, the case having been put at issue, fixed and tried, there was no authority for, thereafter, entering judgment by default and setting said case down for confirmation of default; and the counsel refer us to various articles in the Code of Practice regulating the trial of, and the taking and proving up of judgments by default in ordinary cases. But this case, as the authorities cited in the excerpt from the counsel's brief show, was not to be tried as an ordinary case, but was to be tried in the particular method prescribed by Article 145 of the Code of Practice. Hence it was necessary that there should be two judgments rendered (though one is ordinarily sufficient), the first directing the defendant to return to the matrimonial domicile; and, three months later, upon its being then made to appear that, although notified three times of said judgment, she still failed to return, without giving sufficient reason for such failure, the second judgment, decreeing the separation as prayed for.

The remaining question is whether it was competent for the trial judge, whilst rendering judgment in favor of the plaintiff upon the demand for separation from bed and board, to award the custody of the child to the defendant. The judge appears to have relied upon the authority of Article 157 of the Civil Code which provides: "that in all

cases of separation, the children shall be placed under the care of the party who shall have obtained the separation, unless the judge shall, for the greater advantage of the children, and with the advice of the family meeting, order that some, or, all of them, shall be entrusted to the care of the other party. In all cases of divorce the minor children shall be placed under the tutorship of the party who shall have obtained the divorce." The minor in the case at bar appears to be a little boy who was about five years of age when the proceedings of the family meeting which recommended that he be left with his mother were homologated. There is nothing in the record against the mother except her persistent abandonment of the husband whom she had solemnly obligated herself to cleave unto, forsaking all others, and we do not feel authorized on that account, at this time, to interfere with the disposition which has been made of their child, who, it was hoped, when the case was here three years ago, would draw his parents together. We think it proper to observe, however, that this disposition should be regarded as merely temporary; as having been made mainly out of consideration for the tender age of the child, and as liable to be changed hereafter upon the application of the plaintiff to the District Court, since, aside from the question of age, there is no reason disclosed in the record why the child should not be committed to the care of his father; and the judgment appealed from will be so modified as to leave no doubt of the future control of the District Court over the subject.

It is therefore, ordered, adjudged and decreed that the judgment appealed from be amended to the extent that the custody of the minor as awarded to the defendant shall be held by said defendant subject to such further action as the District Court may see proper to take upon the application of the plaintiff, and subject to such final judgment of divorce as may hereafter be rendered between the parties, if any such there shall be. It is further ordered, adjudged and decreed that, as thus amended, the said judgment be affirmed, the appellee to pay the costs of the appeal.