NICHOLLS, J.
Plaintiff alleged that he was married to the defendant on January 1, 1882, in the parish of Winn; that several children were horn of said marriage, all of whom are above the age of 21 years, except one Elishu King, aged 5 years; that he has always conducted himself properly as a lyusband, and has given his wife no cause or provocation for ill treatment, and has done everything in his power to make her home happy and comfortable; that on or about the 1st of February, 1907, his said wife abandoned petitioner, and has never since returned to him; that at the time of said abandonment petitioner was living in the parish of Winn; that her abandonment is inconsistent with her duties as a wife to petitioner, and that, under the circumstances, petitioner desires to obtain a decree of separation from bed and hoard from his said wife.
In view of the premises, he prayed that said defendant be cited and notified and summoned in the manner pointed out by law to return to the matrimonial domicile; that in due course he have judgment decreeing a separation a mensa et thoro from his said wife.
On this petition, the clerk of the district court, in the absence of the district judge, ordered that the usual reiterated summons issue as prayed for according to law, and that the place of her domicile be fixed at the place of her father, James W. Thornton, in the parish of Winn, La.
On September 25, October 25, and November 26, 1907, defendant was served with summons commanding her to return to her matrimonial domicile at Winnfield, La. On March 24, 1908-, defendant answered. After pleading a general1 denial, she specially denied that she had ever left the matrimonial domicile. She averred that their said matrimonial domicile had always been in Ward-3, in Winn Parish, La., since their marriage. She averred that she had always remained-at said domicile, and was then at said domicile. Defendant averred that her said husband, Martin N. King, had been in the habit for the past eight or ten years of leaving the matrimonial domicile and defendant, not with the view to establish a new and different matrimonial domicile and permitting defendant to share such with him, but leaving defendant, specially preventing her from going with him, and taking his abode at places and under such conditions as to render it impossible for defendant to live with him as his wife.
She averred that occasionally her said-husband had been in the habit during this period of time of returning to the aforesaid-matrimonial domicile, and when he so returned defendant always welcomed him, and acted as a dutiful wife should do so long as he would remain with her. She averred that she was yet willing to so live with him, and was adverse to being separated-from her said husband, but at this time and since this suit had been pending her said husband would neither come to the aforesaid matrimonial domicile nor let his whereabouts be known to defendant so that she-could go to him.
Defendant averred that, immediately after the first citation and summons issued in this-cause was served on her, she went to Winn-field, La., where plaintiff alleged his domicile to be, and made diligent inquiry for plaintiff; also she made diligent inquiry trying to find, out if plaintiff had any house- or place of any kind whereat he and defendant could live as man and wife. She-averred that she so came with the resolution and for the purpose of taking abode with her said husband wherever he might choose to so abide.
*585 She averred that her said husband was not then, nor is not now, in the said town of Winnfield, or anywhere in the parish of Winn, La.; that his whereabouts are unknown to respondent; that he has provided no house or place at all in the town of Winnfield, in the parish of Winn, or anywhere else where it is at all practicable that defendant can abide with her said husband.
Defendant averred her willingness to abide and cohabit with her said husband wherever he may choose to prepare a house or place in which it is practical for them to so live together. She averred her inability to live with her said husband as his wife, which she is longing to do, until he makes the house or place which he intends that they shall so-live known to your defendant.
In view of the premises, defendant prayed that plaintiff’s suit be dismissed at his costs; that he be required to designate the house or place to which he desired that defendant should go and find plaintiff, and in which it is practicable for plaintiff and defendant to live together as man and wife. She prayed for general and equitable relief.
The district judge on the 3d of April, 1908, rendered judgment in favor of plaintiff against defendant, decreeing a separation from bed and board, and the defendant has appealed.
Appellee urges in this court that a new trial is the proper remedy for an improper judgment, and that one who wishes to show that the judgment of the lower court is premature or erroneous should file the motion with the lower court to have the erfcor committed corrected.
The defendant in this case, after judgment was rendered, but before it was,signed, moved the court to vacate the judgment orally rendered, and to dismiss this suit as in case of nonsuit, for the reason that it was without jurisdiction ratione persorae of the parties to the suit, and was without jurisdiction to decree that she should go to Franklin parish, where plaintiff claimed to live and have his domicile; that that parish was beyond the jurisdiction of the court. The court overruled the motion.
We do not think the appeal should be dismissed for the reason assigned. Appellee contends (should-the appeal be not dismissed) that in a suit for separation from bed and board, under article 145 of the Revised Civil Code, a defendant who appears and fights the suit is not entitled to the three notices of judgment commanding her to return; that a judgment granting a separation from bed and board is the proper decree.
In the brief filed on behalf of the plaintiff, appellee states that the parties were married in 1882, and that they separated on February 1, 1907; that they had lived in a state of war for years, and for that reason the court should give considerable weight to the opinion of the trial judge; that in the year 1897 plaintiff made a dation en paiement to his wife of all the property he owned; that this was done for the purpose of saving his home; that defendant through promises and other devices induced plaintiff to allow her to sell the property, and as soon as it had been sold would no longer live with her husband; she kept the money and moved away. The evidence will show some of the reasons for not attempting to accompany her. Defendant has been served with three summons to return to her matrimonial domicile at Winnfield.
The differences which may have existed between the spouses are a matter of no moment, for under the pleadings both parties desire a resumption of marital relations.
The plaintiff in his petition alleged that he resided in the town of Winnfield, but did not designate any particular place therein as the matrimonial domicile. The summons referred to did not specify any, but used general terms.
The evidence shows that plaintiff and defendant lived together on a small farm which *587 lie owned' in the parish of Winn; that he made a dation en paiement to his wife of that property, in part discharge of moneyed claims which she held against him. That she subsequently, with her husband’s consent, sold the property to one Richard Riser (a negro). That when the vendee tools; possession of the property, King and his wife, as a' matter of course, left the place; the wife moving to a small house owned by her father, and the husband, with the movable objects belonging to him, moving to some other place not shown. The matrimonial domicile up to that time had been on the farm. At the time it was broken up by the taking possession of the property by Riser, plaintiff had provided no place to which his wife and child could accompany him. It is not shown that he asked or desired her to do so. He made no objection to her going to the place to which she herself moved, and it is not shown that she refused to allow him to accompany her there. It cannot be said one more than the other of the spouses abandoned the matrimonial domicile. There was at that time no matrimonial domicile to abandon, and no other was ever subsequently designated. The parties evidently parted from each other by common consent. The husband was a man of no means, so far as the record shows; he depended for support upon his manual labor, which condition forced him to constantly shift his residence. The evidence shows that even before husband and wife parted he frequently left her and his child entirely alone on the farm, in the neighborhood of a negro settlement, to their own resources.
The witness McKaskle, who lived in the neighborhood of the place to which the wife had gone, testified that he had passed there several times; that on one occasion he stopped there to see her; that King had told him to ask her if she would live with him; that he did ask her, and she answered “she wouldn’t — that she would not return.” “She said she would not live with him because he-was mean to her; that he treated her badly.” The witness did not say that he told her he was commissioned by her husband to ask her that question; what she says appears to have been said in a casual conversation. Be that as it may, she was free to-change her mind. The effect of her answer was at most to warrant her husband in judicially demanding and ascertaining from her what she proposed to do. When he did ask she has answered that she was willing to go-to him. She did not in her answer “fight the suit,” as counsel asserts. Though she-did resist the attempt of the plaintiff to obtain a “decree of separation from bed and board,” she judicially acquiesced in his demand that she should go to. live with him. It may be questionable whether either the husband or the wife was sincere in expressing a desire or willingness to live together -r he evidently desired a judgment of separation from bed and board, while she did not.
He may have relied upon her meeting his1 demand by a refusal, and been surprised when she availed herself of the demand to-declare that she would go to him. He certainly did not prepare for such a contingency, for he left the town of Winnfield, where he stated in his petition he resided, and the parish of Winn, giving her no notice as to the particular place where he would be found if she elected to go to him.
J. J. Thornton, being on the stand as a witness, when asked whether Mr. King hadr since he and his wife parted from each other, prepared any place for himself and family, answered he did not know of any. She (his wife) asked him to go and find it, and he made inquiry and could find no place he had bought or rented, and none was known of, by the citizens or marshal, belonging to or rented by Martin King; then he (witness) sent the wife herself. She told him she found nothing. She went to find the place which Martin King had gotten for *589 her to live. Her son went with her before the third summons was sent; he himself went some time in January.
Horace Thornton testified that he had been living at Winnfield since June of 1907. That he knew the plaintiff. He was then supposed to be living in Eranklin parish. He had told witness he was making a crop over there. He had seen him in Winnfield in the fall of 1907 at Mrs. Taylor’s — he occupied a room there. Witness and three or four other boarders occupied the same room with him (witness). He did not know of any preparation made by King for taking care of his family within the last year.
Mrs. Taylor, at whose house King boarded while in Winnfield, testified that she heard that he was then living at Eranklin parish. He stayed at her house from the last of June, 1907, to the middle of February, 1908. He had a room there; part of the time he had a room to himself, and part of the time he did not. He made no preparation for receiving his family while living with her.
No witness testified to his having complied with his own duty by having established a residence, or as to his having made preparations for receiving his wife and child, as he should have done. McLean v. Janin, 45 La. Ann. 664, 12 South. 747.
We are of the opinion that the plaintiff should have given notice to his wife as to the specific place where she should go under the summons which had issued to her, and that the summons should specify that place. That she was entitled to exercise her right of going to him up to and until judgment had been rendered by the trial court ordering her to do so, and legal notices of-that judgment had been served upon her under article 145 of the Revised Civil Code. A final judgment of separation from bed and board should not have been rendered until after all the provisions of that article had been complied with. At the time judgment appealed from was rendered, the court was without authority to render such judgment. Bursha v. Lane, 105 La. 112.[1] The law requires two successive judgments to have been, rendered. She was not legally in default when the final judgment was rendered. No judgment by default was ever taken in the case, and the husband himself had never placed her in default. Rev. Civ. Code, arts. 86-1912, and Code Prac. arts. 408, 409 (analogous); Rev. Civ. Code, arts. 1913, 1914.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and this cause is ordered to be remanded to the district court and reinstated on the docket of said court to be there further proceeded with according to law.

 29 South. 712.