[Civ. No. 2855. Second Appellate District, Division Two.—January 20, 1919.]

## IDA J. BIBB, Appellant, v. ROBERT L. BIBB, Respondent.

DIVORCE—DESERTION—HUSBAND'S RIGHT TO SELECT ABODE.—Under section 103 of the Civil Code the right of the husband to determine the family abode does not give him an entirely arbitrary power. He must provide and establish a suitable home, a "reasonable place of living," before he can insist that his wife follow him.

ID.—CAUSE OF ACTION.—It is only when the husband has chosen and established a reasonable place of living as the new domicile, and, in good faith has made offer of the new abode to her, and she, without a sufficient cause has refused to comply with his selection, that a cause of action for desertion arises.

ID.—ANTICIPATORY REFUSAL.—It is not enough to constitute desertion that, prior to the husband's establishing the new domicile, the wife informs him she will not follow him.

ID.—EVIDENCE—BURDEN OF PROOF ON HUSBAND.—The husband seeking a divorce from his wife because of her refusal to follow him to a new abode must show affirmatively not only that he has chosen a particular abode and offered it to his wife, but must also show by

affirmative evidence the character and suitableness of the place so
chosen and that it is a reasonable place for the family abode.

ID.—EVIDENCE INSUFFICIENT.—In this action in which an interlocutory
decree was granted the husband on the ground of desertion, there
being no evidence that he ever established a matrimonial domicile
at the place to which it was claimed the wife refused to follow, or
that he ever chose a house he could rightfully expect her to occupy,
or that he ever bought or rented the house he claimed to have found,
the trial court erred in granting the divorce.

APPEAL from an interlocutory decree of divorce of the
Superior Court of Los Angeles County, and from an order
denying a new trial. Charles Monroe, Judge. Reversed.

Wm. Lewis for Appellant.

Kemp, Mitchell & Silberberg for Respondent.

FINLAYSON, P. J.—Plaintiff sued defendant for a
divorce on the ground of desertion alleged to have commenced
February 9, 1913. Defendant answered, and in a cross-
complaint containing two counts charged, in the first count,
desertion, and in the second certain acts of alleged cruelty.
The court adjudged defendant entitled to a divorce upon the
ground of desertion as charged in the first count of his cross-
complaint. Plaintiff moved for a new trial, which was denied.
She appeals from that order and likewise from the inter-
locutory decree adjudging defendant entitled to the divorce.

In his cross-complaint respondent charges appellant's deser-
tion as follows: "On or about February, 1911, at the City of
Los Angeles . . . plaintiff willfully and voluntarily separated
herself from the cross-complainant herein, with the intent to
desert said cross-complainant, and said plaintiff did at that
time, in the City and County of Los Angeles, refuse to remove
from the then home of plaintiff and cross-complainant at New
Jersey Street, to the City of Hollywood, where this cross-
complainant had provided a suitable home for said plaintiff,
and said cross-complainant at said time informed the plaintiff
that he had secured a position as the Hollywood repre-
sentative of the Union Ice Company, and that the position re-
quired that he should reside in the City of Hollywood for
convenience in attending to said work." Appellant contends
that the evidence is insufficient to support the decree adjudg-

ing respondent entitled to a divorce on account of the desertion thus charged against her in the cross-complaint.

Though the evidence is of an unsatisfactory and fragmentary character, particularly with respect to the vital facts essential to a cause of action for the desertion as charged in the cross-complaint, the controlling facts, stated most favorable to respondent, are substantially as follows: On January 1, 1911, he went to work for the Union Ice Company at its plant in Hollywood, a suburb of the city of Los Angeles, and now an integral part of that municipality. At that time he and his wife were living in Los Angeles at 1624 New Jersey Street, Boyle Heights, whence, on April 12, 1911, she moved to 1705 East Sixty-third Street. When he took employment with the Ice Company he looked for a home in Hollywood. He testified, in substance, as follows: "When I first went to Hollywood I wanted her to go. I had my position there, and I looked for a house, and found a house, and I insisted that she go out there, and she refused to go; and she said we did not have enough money to keep house. She absolutely refused to live with me at that time, and she did two or three days after that. She absolutely refused to go to Hollywood, not only at that time—some time in February, 1911—but two or three other times. When we went to Sixty-third Street—April 12, 1911 —I insisted several times that she go to Hollywood, and behave herself, and that I would give her a good home, and she refused it." On February 9, 1913, a stormy interview ensued between the spouses, evoked by the arrival of respondent's sister from the east. This, says respondent, was the straw that broke the camel's back. He testified that that evening "she begged me not to leave her, and begged me to take her to Hollywood; that she would be good—but it was too late. I had offered to take her there lots of times before, and she would not go." It seems that, notwithstanding appellant's refusal to go with him to Hollywood, he, nevertheless, for an indefinite period immediately following the commencement of the desertion of which he complains, spent his nights with his wife, at the house occupied by her in Boyle Heights, and later, for an indefinite period, he spent his Saturday nights and Sundays with her. As to this phase of the case he testified, in substance, as follows: "When I first went to Hollywood I came home every day. When my wife left the house on New Jersey Street, for the house on Sixty-third Street I went out

once a week. I would usually go out there Saturday nights after I got through with my work. I stayed with her during that time on account of the little girl''—referring to their adopted child. ''I stopped going out there in February, 1913, but I had had nothing to do with her before. I did not have any relations with her for probably nearly a year. I don't believe I ever had any marital relations with Mrs. Bibb, or lived with her, after she left Boyle Heights. I don't remember.''

There are no findings of fact. The interlocutory decree recites that the parties waived written findings, and adjudges that ''the defendant, Robert L. Bibb, is entitled to a divorce from the plaintiff, Ida J. Bibb, upon the ground of desertion.'' From this the only legitimate inference is that the court found against the charges of cruelty set forth in the second count of respondent's cross-complaint. So that the decree must find support, if any, in the charge of desertion, as alleged in the first count of respondent's cross-complaint, which is based upon section 103 of the Civil Code, whereby it is provided that ''the husband may choose any reasonable place . . . of living, and if the wife does not conform thereto, it is desertion.''

Ordinarily, the husband may choose the family domicile at pleasure. It is the wife's duty to follow his fortunes—''to go whither he goeth''—and abide in that place where it is most convenient for him to enjoy her society, and where he is able and willing to make provision for her support and that of his family. But his right to determine the family abode does not give him an entirely arbitrary power; it is not without its limitations. He is bound to provide and establish a suitable home for his wife, ere he can insist that she follow him. The law has limited his right to change the family abode. It is so limited that he can only ''choose any reasonable place . . . of living.'' (Civ. Code, sec. 103.) It is when, and only when, he has so chosen and established the new domicile, and, in good faith, has made offer of the new abode to her, and she, without a sufficient cause, has refused to comply with his selection, that a cause of action for desertion arises. (*Vosburg* v. *Vosburg,* 136 Cal. 195, [68 Pac. 694]. See, also, *Hagle* v. *Hagle,* 74 Cal. 608, [16 Pac. 518]; *Keesey* v. *Keesey,* 160 Cal. 727, [117 Pac. 1054]; *Phelan* v. *Phelan,* 35 Ill. App. 511, affirmed in 135 Ill. 445, [25 N. E. 751]; *King* v. *King,* 122 La. 582, [47 South. 909]; *Heaton* v. *Heaton,* 23 Pa. Co.

Ct. 218.) It is not enough that, prior to his establishing the new domicile, she informs him she will not follow him. For, perchance, he may accede to her wishes and not make the change; or she, perhaps, when the new domicile shall have been actually chosen and established, may exercise a woman's privilege and change her mind. The law does not countenance a divorce for a mere disagreement as to whether a contemplated change shall or shall not be made. Her duty is to follow him if and when he actually moves to a new, but suitable, domicile. Until he moves she cannot follow. Nor is she in default until, having established a new domicile, he has offered it to her and requested her to follow him. Until such offer and request be made, and she thereby informed as to the location and character of the place chosen by the husband, she cannot know whether it is a "reasonable place of living." Until she has been afforded a reasonable opportunity for knowing whether the abode chosen by the husband is a "reasonable place of living," she is under no obligation to follow him. Says the court in the Vosburg case: "She was not guilty of desertion until he had made a choice, offered it to her, and she, without sufficient cause, had refused to comply with his selection." (136 Cal. 204, [68 Pac. 697].) The husband, seeking a divorce from his wife because of her refusal to follow him to a new abode, must show that the new domicile selected by him is a reasonable place of abode. No presumption in that regard can be indulged in his favor. It is incumbent upon him to show affirmatively, not only that he has chosen a particular abode and offered it to his wife, but that the domicile so chosen is a reasonable place for the family abode. By affirmative evidence, he must show its character and its suitableness. (*Kenniston* v. *Kenniston,* 6 Cal. App. 657, [92 Pac. 1037].) Finally, if it be his intention, to visit upon his wife the penalty of her failure to follow him to the new domicile, he should present to her, in plain and unequivocal terms, the alternative of a compliance with his wishes or a surrender of all her conjugal rights. (*Hardenbergh* v. *Hardenbergh,* 14 Cal. 654.) Unless such alternative be so presented to her, it cannot readily be ascertained whether or not she harbors an actual intent to desert him; and the actual intent to desert is as much an essential ingredient of the desertion as is the voluntary separation itself. (Civ. Code, sec. 95; *Hardenbergh* v. *Hardenbergh, supra.*) Were

this not the rule the marital relation—instituted for the good of society, and not to be dissolved save for the gravest causes —might easily be subject to dissolution by the husband's guile and crafty duplicity.

Viewing the facts disclosed by the record in the light of these principles, we are constrained to hold that the trial court erred in granting a divorce to respondent. There is no evidence that he ever chose for himself and family an abode in Hollywood. True, he says he "looked for" and "found" a house in Hollywood. But there is no evidence that he ever bought or rented or even tentatively bargained for the house that he "found." On the contrary, he himself testifies that for some time after he went to Hollywood to work for the Ice Company he returned to and slept at his house in Boyle Heights, where his wife and adopted daughter lived; and later, after appellant with their adopted daughter moved to the Sixty-third Street house, he returned thereto every Saturday, remaining until the following Monday morning, and frequently he spent a night with his wife during the middle of the week. Doubtless it may be inferred from some of the facts in evidence that for some part of the period during which he claimed his wife was guilty of willful desertion he slept in Hollywood; but there is nothing to show that, while in Hollywood, he did not occupy a single bed in a single room suitable for his own use but wholly insufficient as a family abode for himself, wife, and adopted daughter. The evidence fails utterly to show that he ever actually established a matrimonial domicile in Hollywood, or that he ever there chose a house that he could rightfully expect his wife and daughter to occupy. There was no evidence as to the character of the house in Hollywood which he says he "found," though the burden is upon him to show that he had chosen a reasonably suitable place of abode. In the absence of evidence, no presumption can be indulged that the house which he says he "found" was a "reasonable place of living." There is no evidence that he ever offered her, as a home for the family, the house which he says he "found." She testifies they went out one afternoon to Hollywood and looked for a house, but could not find any that he felt he could afford to pay for. She also testifies that he never informed her that he had rented a place in Hollywood. Her testimony that he never so informed her is uncontradicted—at any rate it is not con-

tradicted by evidence printed in any of the briefs, though the appeal was taken under the so-called alternative method. There is no evidence whatever that he ever offered appellant any particular abode in Hollywood, and unless such an offer were made she could not possibly know whether or not the place "found" by him was a "reasonable place of living." Furthermore, assuming that for a year or more immediately prior to the action respondent had not cohabited with his wife, and conceding that during such year or more of conjugal abstinence she could be guilty of willful desertion for which he would have a cause of action for divorce, nevertheless, for an indeterminate but considerable time immediately subsequent to appellant's alleged declination to follow respondent to Hollywood they continued their customary matrimonial cohabitation as man and wife at the old abode in Boyle Heights, where, for some time following her alleged refusal to go to Hollywood, the husband daily returned to their home and cohabited with her. By this equivocal conduct he failed to present to her, clearly and definitely, the alternative of a compliance with his will to move to Hollywood, or be deemed guilty of willful desertion.

Judgment and order reversed.

Sloane, J., and Thomas, J., concurred.