PROVO STY, J.
[1] This is a mandamus proceeding to compel acceptance of a tender made in redemption of a tax sale. The tender was refused for the reason that it was made after the one year allowed by the Constitution, art. 233, for the redemption of property sold at tax sale, had expired. The sale was made on June 25, 1915, and the tender on April 10, 1917. Act 224, p. 370, of 1910, provides that the one year’s delay for redemption shall begin to run from the date on which the tax debtor shall have been notified of the tax sale having taken place; and the plaintiff in this case was never notified of the tax sale having taken place.
Defendant contends, however, that in so far as the said act fixes a different time than the tax sale as the date from which the year allowed for redemption shall begin to run, it is in contravention of said article 233 of the Constitution, and null.
Plaintiff, on the other hand, contends that by said article of the Constitution no date is fixed for the beginning of the year for redemption, but that that date is left to be fixed by the Legislature.
Said article reads:
“There shall be no forfeiture of property for the nonpayment of taxes, state, levee district, parochial or municipal, but at the expiration of the year in which said taxes are due the collector shall, without suit, and after giving notice to the delinquent in the manner to be provided by law, advertise for sale in the official journal of the parish, city or municipality, provided there be an official journal in such parish, city or municipality, or if not, then, as is now or may be provided by law for sheriffs’ sales, the property on which the taxes are due in the manner provided for judicial sales, and on the day of sale he shall sell such portion of the property as the debtor shall point out; and in case the debtor shall not point out sufficient property, the collector shall, at once and without further delay, sell the least quantity of property which any bidder will buy for the amount of taxes, interest and costs. The sale shall be without appraisement, and the property sold shall be redeemable at any time for the space of one year, by paying the price given, including costs, and twenty per cent, thereon. No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent, per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser: provided, this shall not apply to sales annulled on account of taxes having been paid prior to the date of sale, or dual assessments. All deeds of sale made, or that may bo made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales.
“No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired, and within three years from the date of recordation of the tax deed, if no notice is given. The manner of notice and form of proceeding to quiet tax titles shall be provided by law. Taxes on movables shall be collected by seizure' and sale by the tax collector of the movable property of the delinquent, whether it be the property assessed or not, sufficient to pay the tax. Sale of such property shall be made at public auction, without appraisement, after ten days’ advertisement, made within ten days from date of *901 seizure, and shall be absolute and without redemption.
“If the tax collector can find no corporeal movables of the delinquent to seize, he may levy on incorporeal rights, by notifying the debtor thereof, or he may proceed by summary rule in the courts to compel the delinquent to deliver up for sale property in his possession or under his control.”
While the one year for redemption is not here in express terms said to begin to run from the date of the tax sale, that meaning, in our opinion, is positively conveyed. “The sale shall be without appraisement, and the property sold shall be redeemable at any time for the space of one year,” cannot possibly mean anything else than that the delay for redemption is fixed at one year from the date of the sale.
There is no rule requiring constitutional provisions to be formulated in express terms.
A Constitution is hut an expression of legislative will, like a statute; if, therefore, the legislative will be sufficiently expressed, no more is necessary. The form of language is insignificant. “In the main the general principles governing the construction of statutes apply also to the construction of constitutions.” 12 C. J. 699. Now, we venture to say, no one would doubt the meaning of said provision as limiting the delay for redemption to the year immediately following the tax sale if said provision were met with in a statute or anywhere else than in a constitution. But, because it is found in a constitution, and because constitutional provisions are sometimes not self-executive, question is raised in that regard.
If the framers of the Constitution had contented themselves with providing that the tax sale should be redeemable, and had said nothing as to the duration of the right to redeem, the provision would not have been self-executory, and the Legislature would have been called upon to fix the duration of the right; but, they having gone on and declared that the sale should be redeemable, in the space of one year, the provision cannot, be said not to fix the duration of the right of redemption, or, in other words, not to he self-executory.
No doubt it would not be self-executory if, as contended, it did not fix a point of departure, or beginning, for the redemption period which it prescribes; but it does fix this point of departure, since the words, “the property shall be redeemable for the space of one year,” evidently, obviously, and necessarily mean one year from the sale. It could not possibly mean a space of one year at some indefinite time in the future. To be redeemable “for the space of one year” has a definite meaning; it means that for one year from and after the sale the property shall be redeemable. If more time than this were allowed for the redemption, the period of redemption would be not “the space of one year,” but it would be that length of time plus whatever more time was allowed.
The fact that said provision is contained in a constitution, and not in an ordinary statute, does not have the effect of altering its plain meaning, but is insignificant. In that connection the following excerpt from 6 B. O. L. 57, is interesting:
“When the federal Constitution and the first state Constitutions were formed a constitution was treated as establishing a mere outline of government, providing for the different departments of the governmental machinery, and securing certain fundamental and inalienable rights of citizens, but leaving all matters of administration and policy to the departments created by the Constitution. This form of organic instrument gave rise to a general presumption that legislation was necessary in order to give effect to the provisions of the Constitution, and that its terms operated primarily as commands to the officers and departments of the government. During the last fifty years state constitutions have been generally drafted upon a different principle, and have often become in effect extensive codes of laws, intended to operate directly upon the people in a manner similar to that of statutory enactments. Accord *903 ingly the presumption now is that all provisions of the Constitution are self-executing.”
And why not, especially in the case of our own Constitution, which contains almost as much purely administrative legislation as the Revised Statutes do, and is almost as long. The fact is, if the said provision is, sure enough, not self-executing, it is probably the only one of that character to he found in our Constitution. We can at present think of no other; except, of course, such as are accompanied by express instructions to the Legislature to enact enabling legislation or are otherwise expressly qualified; for instance, the two which we find in this same article 233, where it is said that the notice of delinquency is to be given to the tax debt- or “in the manner to be provided by law,” and “the manner of notice and the form of proceeding to quiet tax titles shall be provided by law”; but it will be noted no such injunction is laid upon the Legislature, or any such qualification added, in connection with this clause prescribing the time allowed for redemption. And why should not the said provision be self-executory when all the other numerous provisions which precede or follow it in said article are self-executory. Thus:
The provision, “There shall be no forfeiture of property for nonpayment of taxes, * * * but at the expiration of the year * * * the collector shall, without suit, and after giving notice to the delinquent in the manner to be provided by law, advertize,” etc., is self-executory, except, of course, as to the manner of giving notice.
The provision, “The sale shall be without appraisement,” is self-executory.
The provision, “No judgment annulling a tax sale shall have effect until,” etc., is self-executory.
The provision, “All deeds of sale made * * * by the collectors of taxes shall be received by courts in evidence as prima facie valid sales,” is self-executory.
The next provision, “No sale of property,” etc., is self-executory.
And so the next, “Taxes on movables,” etc., is self-executory.
And so the. next, “Sale of such property,” etc., is self-executory.
And, finally, the next, “If the tax collector can find no corporeal movables,” etc., is self-executory.
Not one of these provisions could the Legislature defeat or delay the operation of by abstaining to provide enabling legislation to carry it into effect. Why, then, should the situation be different as to this redemption provision; especially, since 1879 our Constitution has not been confined to providing for the organization of the government and enunciating simply general principles, but it has been mainly legislative in character, dealing with matters which might have been left to the General Assembly.
The Constitution of 1812 contained no provision on the subject of taxation or tax sales. The Constitution of 1845 contains no reference to tax sales, and only the following with reference to taxation:
“Art. 127. Taxation shall be equal and uniform throughout the state. After the year 1848, all property on which taxes may be levied in this state shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property shall be taxed higher than another species of property of equal value, on which taxes shall be levied; the Legislature shall have power to levy an income tax, and to tax all persons pursuing mv occunation, trade, or profession.”
The Constitutions of 1852 and 1864 readopted this same provision verbatim, as article 123 in the former, and 124 in the latter, and contained no other reference to taxation, and none at all to tax sales.
The only reference to taxation or tax sales in the Constitution of 1S68 was as follows:
*905 “Art. 118. Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law. The General Assembly shall have power to exempt from taxation property actually used for church, school, or charitable purposes. The General Assembly may levy an income tax upon all persons pursuing any occupation, trade, or calling. And all persons shall obtain a license as provided by law. All tax on income shall be pro rata on the amount of the income or business done. And all deeds of sale made, or that may be made, by collectors of taxes shall be received by courts in evidence as prima facie valid sales. The General Assembly shall levy a poll tax on all male inhabitants of this state, over twenty-one years old, for school and charitable purposes, which tax shall never exceed one dollar and fifty cents per annum.”
In all these Constitutions no distrust whatever of the Legislature or fear of abuse of power by it was exhibited; but the Constitution of 1879, coming after an era of much legislative extravagance was dictated, as is well known, by an entirely different spirit. Its chief aim, while providing for the organization of the government, was to put limitations upon the legislative power; and one of the ways of doing this was to enact administrative legislation upon many subjects 'which theretofore had been left to the discretion of the General Assembly, and chief among these subjects was that of taxation. A special subdivision was allotted to -“Revenue and Taxation,” and under this heading much legislation was incorporated of a self-operative character, and part of this legislation was article 210, reading:
“Art. 210. There shall be no forfeiture of property for the nonpayment of taxes, state, levee district, parochial or municipal; but at the expiration of the year in which they are due the collector shall, without suit, and after giving notice to the delinquent in the. manner to.be provided by law (which shall not be by publication, except in case of unknown owner), advertize for sale the property on which the taxes are due in the manner provided for judicial sales, and on the day of the sale he shall sell such portion of the property as the debtor shall point out, and, in case the debtor shall not point out sufficient property, the. collector shall at once and without further delay sell the least quantity of property which any bidder will buy for the amount of the taxes, interest and costs. The sale shall be without appraisement, and the property sold shall be redeemable at any time for the space of one year, by paying tlie price given, with twenty per cent, and costs added. No sale of property for taxes shall be annulled for any informality in the proceedings until the price paid, with ten per cent, interest, be tendered to the purchaser. All deeds of sale made, or that may be made, by collectors of taxes shall be received by courts in evidence as prima facie valid.”
Nearly all of this, as can be observed, is reproduced verbatim in article 233 of our present Constitution, and a number of provisions are added which are incontrovertibly self-executory.
The very object and purpose of these provisions was to legislate effectively and finally upon the subject-matters covered, and, incidentally, to withdraw from the General Assembly the power to legislate differently upon them. Many of these provisions, and expecially those added by the Constitution of 1898, were intended to protect the tax title, to give it stability, and incidentally commercial value, and thereby bring back into commerce the enormous quantity of lands depending upon tax titles, the validity of which, under the decisions of the courts, had become uncertain, and also facilitate the collection of the revenues of the state. To hold these provisions, or any of them, not to be self-operative (except in the two respects expressly indicated), would therefore be to go counter to, and in that measure frustrate, their very object and purpose.
To “redeem,” the dictionaries inform us, is to “repurchase.” The word “redeem” is derived from two Latin words, “re” and “emo,” “re” being a preposition meaning back, and “emo” a verb, the conjugation of which is, present infinitive “emere,” past participle “emptus.” A “redemptus,” or “redemption,” is a purchase back, or repurchase. The time *907 to repurchase, or to redeem, begins, in the natural order of things, from the time of the sale; for from that moment the seller must repurchase, or redeem, if ever he is to reacquire. While the time to repurchase, or redeem, thus begins, in the natural order of things, at the time of the sale, it may, of course, be made to begin later by agreement or by legislative provision. The purchaser might have need of the use of the property for a certain time, and might therefore want to postpone the option of redemption until after the expiration of that time. But no such reason as this can exist in the case of a tax sale, and therefore the obvious, natural, time for the period of redemption to begin is from the time of the sale.
When the legislator comes to legislating on the subject of redemption, two things are to be considered: First, whether redemption shall be allowed; and, if so, then, second, what period of time is to be allowed for it. When, in drafting the said article 233, the matter of redemption came to be considered, and it was decided to allow redemption, the question of the period of time during which it should be allowed came up at once for consideration, and that period was fixed at “the space of one year.” To say that that year was not to be the year immediately following the sale, but perhaps the second or the third thereafter, or some year that the Legislature might thereafter decide upon, is, it seems to us, to put a strange, and altogether arbitrary, construction upon the situation.
Why the framers of said article 233 would not have determined then and there what this time for redemption should be, but should have relegated to the Legislature to fix that time later, it would be hard for anybody to say. It was just as easy for them to determine then and there when this period should begin as for. the Legislature to do it later; and the natural, obvious time at which to make it begin was from the time of the sale, and the customary duration of it being one year, the adoption of that period for its duration was the natural and obvious thing to do.
The fact that all the other provisions of the article are self-executory (as has already been shown) furnishes intrinsic evidence of this particular article having been intended to be so, and therefore of the year spoken of within which to redeem having been intended to be the year immediately following the sale.
Further intrinsic evidence is found in the fact that said provision would otherwise fail of its purpose, and be a halting, incomplete piece of legislation, since its patent purpose is to legislate on the subject of redemption, and we have already shown that when legislating on the subject of redemption it does not suffice to provide that redemption shall be allowed, but that there must also be a time fixed for the exercise of the redemption. Otherwise the title to the property would be left for an indefinite time defeasible by redemption, and therefore for an indefinite time unstable and uncertain, and real estate the title to which is in that condition is practically out of commerce. The holder by such defeasible, unstable, uncertain title cannot find to sell the property; and dares not venture to improve it, or to undertake a crop upon it, or lease it, or mortgage it, or otherwise utilize it. The commonwealth has an interest in real estate not being left in that situation. The legislator who would make the sale of real estate redeemable, and not fix a term for the exercise of the right of redemption, would be guilty of a piece of folly.
Again intrinsic evidence is found in the fact that whereas the amount which the debt- or must tender in the case of redemption is a fixed 20 per cent, on the price of the tax sale, it is not a fixed amount in the case of a suit to annul, but is 10 per cent, per annum on this price; thus clearly indicating that, *909 in the contemplation of the framers of the provision, the time during which the purchaser at the tax sale might he kept out of his money before the redemption was effected was a definite period, to wit, the space of one year, and hence the amount necessary to be tendered could be definitely fixed; whereas, in the case of a suit to annul, the duration of the delay was uncertain, and the most that could he done towards fixing the amount necessary to be tendered was to provide that it should he so much per annum, or, in other words, should depend upon the time that would have to run before judgment in the suit.
And still further intrinsic evidence is to he found in the provision that in the case of movable property the tax sale “shall be absolute and without redemption.” For why make a provision so emphatically self-operative as this in the case of movables, and yet expose to the discretion of the Legislature the incomparably more important case of immovables. Ordinarily the stability of the title to movable property, as compared in importance to that to real estate, is,' so to speak, a negligible quantity.
Indeed, not evidence merely, but conclusive proof of the fact that the space of one year spoken of by said article is the space of one year immediately following the tax sale, is to be derived from the text of said article. For either that particular space of one year is meant to be designated and fixed by the article for the redemption, or no space of one year in particular is intended to be designated and fixed, but nothing more is intended than that the period shall be one of one year, leaving to the Legislature to fix the time when this space of one year shall begin to run; and therefore the Legislature could make it begin one day, one week, one month, one year, or two years, or ten years or more, for the matter of that, after the tax sale, or could, as this act of 1910 has done, make its beginning depend upon the happening of some event; and, if so, the Legislature could, in the first place, defeat altogether the operation of said provision by not legislating at all on the subject, thus leaving tax sales either not redeemable at all, or else redeemable for an indefinite time; and, in the second place,- it could make the period of redemption begin after the period fixed by said article for the bringing of suit to annul had expired; and if it did the latter, after the delay had passed within which the tax debtor could have the tax sale set aside by tendering back the price paid and interest and bringing suit to annul, he would still be in time to have the tax sale set aside by merely tendering back the price of the sale and interest, without bringing suit to annul.
The said article provides that the notice of sale to be given for starting the six-months delay within which to bring a suit to annul the tax sale “shall not be served until the time for redemption has expired.” Now, could it be possible that the time for redemption here referred to was not the time for redemption provided for by the article itself, but some time for redemption to be fixed by the Legislature; so that while the delay for bringing suit after service of notice would be only of six months’ time, the time when this notice might be served, might be delayed several years simply by fixing at several years after the tax sale the beginning of the space of one year prescribed for the redemption.
Finally, we find that by the express terms of said article the notice of sale cannot be served “until the time for redemption has expired,” while by said act of 1910 the time for redemption “shall begin to run only after the tax purchaser shall have notified the owners of the sale.” Now, if the notice of sale cannot be served until the delay for redemption has expired, and the delay for redemption cannot begin to run until the notice of sale has been served, the situation, it must be admitted, is messed up indeed. The only way-this situation could be straightened out would *911 be to hold that two notices of sale would have to be served — one for starting the delay for redemption a running, and one for starting the six-months prescription a running; but this solution would be very much on the order of making one big hole in the door for the mother cat to get in and one little hole for the kitten.
It is said that the idea of a double notice being thus required has nothing strange about it, since in suits for separation from bed and board on the ground of abandonment our law requires a triple notice. But there is no analogy between the two cases. In separation suits the object of the two additional notices is not to convey information, but to try and bring about a reconciliation. Perkins v. Potts, 8 La. Ann. 14; Derby v. Dancey, 112 La. 891, 36 South. 795; Bursha v. Lane, 105 La. 112, 29 South. 712; Bienvenu v. Buisson, 14 La. Ann. 386; King v. King, 122 La. 582, 47 South. 909; Merrill v. Flint, 28 La. Ann. 194; Ashton v. Grucker, 48 La. Ann. 1194, 20 South. 738.
It is said that Act 101, p. 127, of 1898, is intended to provide the manner of serving the notice by which the purchaser at the tax sale starts on its course the six-months delay within which a suit to annul may be brought. The object of that act, as appears from its contents, is to provide a means by which the purchaser may get a judgment quieting his tax title. It does not purport to prescribe the manner in which shall be served the notice for starting on its course the six-months delay within which the tax debtor or former owner may bring suit to annul the tax sale.
As already stated, and as may be seen by comparison, the said provision for redemption, as well as nearly all the rest of said article 233, was taken verbatim from the Constitution of 1879; and there can be no doubt whatever that said provision has precisely the same meaning, scope, and operation in. our present'Constitution that it had in the Constitution of 1879. Now, as said article 233 stood in the Constitution of 1879, the notice of delinquency required to be given to the tax debtor could not be by publication, or constructive, but had to be actual. This was deemed to be sufficient notice to the debt- or that the tax sale would take place unless the tax was paid. And, indeed, since death and taxes are considered to be the two things in this world which are certain, and since a property owner cannot but know that unless he pays his taxes his property will be sold to pay them, what notice does he need of the sale? To jog his memory by notice of delinquency ought, at all events, to be sufficient.
The tender was made'in this case more than one year after the tax collector’s deed had been recorded; hence we are not called on to decide whether the tax sale is to be considered as completed or consummated until such recordation has been made; but since an argument is being founded in the case upon the fact that, both before and since the adoption of the said article 233, our revenue laws (Act 105, p. 154, of 1874, § 2; Act 77, p. 8S, of 1880, § 40; Act 170, p. 346, of 189S, § 63) have provided that the time for redemption shall run from the date of the recordation of' the tax sale, it may be well that we should add a word on that point.
By article 119 of the Constitution the sheriff is made ex officio tax collector. By our article 233 property on which taxes are due must be advertised for sale “in the manner provided by law for judicial sales.” By articles 2265 and 2266 of the Civil Code -(in force since 1825) the sheriff is required, in judicial sales, to make a deed in favor of the purchaser, and to record this deed, and no deed to real estate can affect third persons until recorded. By our article 233 the time within which suit may be filed to annul a tax sale.begins to run from the recordation of the tax deed. By the revenue law in force at the time of the adoption of the Constitution of 1879 and of our present Constitution the tax sale was *913 considered to be complete, and the delay for redemption began to run from the date of the recordation of the tax deed. In view of all. these legal provisions, which existed at the time of the adoption of article 210 of the Constitution of 1879 and of this article 233 of our present Constitution, it is not only possible, but highly probable, that the framers of said article 233 contemplated that the tax sale should be considered to be finally accomplished or consummated, only by and from the recordation of the tax deed; and therefore that the delay for redemption should run from that time, not only for the suit to annul, but also for the redemption. There is ample reason for making the delay for redemption run from that date, for it is a fixed date, established by the public records, as to which there could be no dispute; whereas any other date, especially one to be fixed by the giving of notice, would be always more or less open to dispute.
[2-4] It is argued that, by providing in the several revenue laws that the delay for redemption shall run from the recordation of the tax- deed, the Legislature has interpreted article 233 as not meaning that the year for redemption shall be the year immediately following the sale. Those statutes can be reconciled with said article 233 only on the theory that said article, read as a whole, in connection with the statutes and codal provisions already in existence at the time of its adoption, means that the tax sale is to be considered as complete, and fixed in its date, only when actually put of record. It may be that this is placing a wrong construction upon said article; but it is not an impossible or unreasonable construction, and the rule of law is that a legislative construction of the organic law will be upheld, or acquiesced in, as being probably correct and as a matter of policy, if it be a reasonably possible construction. 12 C. J. 714. But the rule of law also is that—
.“The construction of the Constitution is the peculiar province of the courts, and to them belongs the final decision. The rule based on principle and supported by the great body of authority is that, if the meaning of a constitutional provision is clear, legislative or executive interpretation thereof is entitled to no weight.” 12 O. J.' 716.
The said article 233 may not be clear and may therefore be open to legislative interpretation on the point of whether, in its reference to the tax sale, it means the tax sale before completion by being put of record, and having its record date thereby fixed, or means the tax sale after completion by being put of record, and its date of record thereby fixed; but said article is clear, if the English language can be made clear, that the time allowed for redemption is one year from the tax sale— one year from the completion of the sale— whether such completion is to be reckoned from the adjudication, or from the execution of the tax deed, or from the recordation of the .tax deed. The interpretation of said article as meaning a tax sale consummated by being put of record has been acquiesced in because it has appeared to be a reasonable interpretation. But to argue that, because that legislative interpretation has been acquiesced in, another legislative interpretation entirely at variance with the article must also be acquiesced in, is to argue ineffectively.
It is also said that the constitutional question presented in this case for decision has been repeatedly decided by this court; that it is now stare decisis. And in support of that proposition the cases of Taylor v. Moise, 52 La. Ann. 2016, 28 South. 237, Gonzales v. Saux, 119 La. 657, 44 South. 332, and Charbonnet v. Forschler, 138 La. 281, 70 South. 224, are cited. Suffice it to say that said constitutional question was not raised in those cases, much less considered. Oases in which a certain constitutional question was *915 not raised or considered can certainly not be stare decisis ol that question.
[5, 6] Reviewing the said cited cases, we find that in the Charbonnet Case the question of the point of departure of the delay for redemption was not involved at all, the delay for redemption had admittedly expired more than nine years back; but the sole question was as to whether the auditor could allow property adjudicated to the state at tax sale to be redeemed after the delay fixed by the revenue law for redemption had expired, in the absence of any statute authorizing him to do so; that in the Taylor Case and in the Gonzales Case no constitutional question at all was raised, but that it was tacitly assumed by counsel, and by the court as well apparently, that the delay for redemption ran from the record date of the tax sale, or, in other words, the date of the recordation of the tax deed. Some courts will not consider a constitutional question except by a full bench. This court will not consider a constitutional question unless it has been raised by the pleadings. In said cases no constitutional question was raised. How, then, can those cases be stare decisis of the constitutional question raised in the present case. At most, these cases show a tacit acquiescence in a legislative interpretation, which interpretation is an entirely reasonable one, to wit, that the tax sale meant by said article 233 is a tax sale to which a fixed record date has been given by registry.
In opposition to the views expressed in this opinion it is said that they attribute to the framers of the Constitution an intention to relieve the General Assembly of the necessity of legislating on revenue and taxation. We answer that the intention was to preclude the Legislature from legislating on certain features of revenue and taxation differently from the provisions contained in the Constitution ; but that, apart from this, the Legislature was left free to legislate upon revenue and taxation as its judgment might dictate.
The learned trial judge took the same view of the matter that we do here.
Judgment affirmed..
MONROE, ,C. J., concurs in the decree.
DAWKINS, J., dissents.
See dissenting opinion of O’NIELL, J., 81 South. 392.