[Civ. No. 6229. Second Appellate District, Division One.—July 30, 1929.]

CARRIE DANIELSON, Appellant, v. CHARLES B. DANIELSON, Respondent.

I. Henry Harris for Appellant.

George C. Watson for Respondent.

HOLLZER, J., *pro tem.*—This is an action for divorce. The trial court granted the husband, who is the defendant herein, a decree of divorce on the ground of desertion. Plaintiff appeals, claiming that the evidence is insufficient to sustain such decree.

The gist of plaintiff's contention is that the finding of desertion rests wholly upon her alleged refusal to reside in the home selected by the defendant. As to such finding, it is insisted that there is no evidence showing that the defendant had actually selected some particular place as the home, or that he had offered a definite home to her and requested her to follow him, or that such home was a reasonable place of abode.

Appellant argues that in the absence of such a showing she could not be found guilty of desertion. The case of

*Bibb* v. *Bibb,* 39 Cal. App. 406 [179 Pac. 214], is cited in support of appellant's position.

The answer to appellant's contention lies in the fact that neither the pleadings nor the decree herein restrict the case to so narrow an issue. The cross-complaint upon which the decree was granted, in addition to setting forth the necessary statistical facts, alleges in paragraph V: "That on or about the 21st day of February, 1924, the cross-defendant, Carrie Danielson, disregarding the solemnity of her marriage vow, wilfully and without cause, deserted and abandoned the cross-complainant, and ever since has, and still continues to, so wilfully and without cause desert and abandon said cross-complainant, and to live separate and apart from him, without any sufficient cause or any reason, and against his will and without his consent." The trial court found that the allegations of the complaint were not true, and that the allegations of the cross-complaint were true.

The record on this appeal was prepared under what is known as the alternative method. Although the reporter's transcript contains many pages of testimony relating to the issue of desertion, only the most meager excerpts of the evidence pertaining to the same are to be found in appellant's brief.

Our examination of the record discloses testimony tending to prove the following facts: Defendant was in the oil business, and for many years maintained his headquarters at Bakersfield. For the period of about eight years prior to 1920 plaintiff had resided with her husband in Bakersfield during the winter months. Thereafter she resided in Los Angeles, where defendant visited her from time to time. In February, 1924, the husband, being dissatisfied with this arrangement, had a conversation with his wife wherein he requested her to make her home with him in Bakersfield. Plaintiff declined to do so, claiming that she was in poor health and that it would be injurious for her to move to Bakersfield. In this same conversation, according to the defendant, his wife informed him that she did not want him as a husband, that there were other people who meant more to her. On the evening following this conversation the husband discovered his wife at a public dance-hall accompanied by a man in no way related to her and who was a

stranger to the husband. Shortly prior to this incident the wife collected $1150 in settlement of personal injuries which she had sustained several months previously, and appropriated this entire sum to her own use.

Very soon after the above-mentioned conversation occurred defendant returned to Bakersfield and rented, for a period of two weeks, one-half of, or one side of, a dwelling-house, located on Nineteenth Street, near A Street, in that city. Thereupon, under date of February 25, 1924, he wrote to his wife, stating, in substance, that it would be better for her to come to Bakersfield, and that they should take rooms and go to housekeeping, as he did not wish to be separated from her.

To this the wife replied in writing, stating that defendant knew her health would not permit her to live in Bakersfield, and that he should never again ask her to live in a place that would kill her. The letter makes some further comments about her health, and requests the defendant to send her some money, although, as previously indicated, she had, secured $1150 only a few days prior thereto in settlement of her personal injury claim.

Shortly thereafter the husband came to Los Angeles for the purpose of discussing with his wife the conditions existing between them. Upon arriving at the apartment where his wife had resided for a considerable period, defendant learned that she had moved away, without leaving any information as to new address. In fact, plaintiff took pains to keep her whereabouts unknown to her husband, and in that connection admonished her married daughter, who lived in an adjoining suburb, not to tell her father where she had moved. Thereupon defendant returned to Bakersfield and wrote to his wife, in care of this married daughter, requesting her to meet him and the married daughter at a certain hotel in Los Angeles, on a date specified, for the purpose of talking things over. This letter was delivered to the plaintiff, but the latter informed her son-in-law that she would not keep the appointment requested. The husband, also the married daughter and son-in-law waited for plaintiff at the hotel for several hours, but she failed to appear.

Plaintiff's son-in-law testified that she told him that she did not want anything to do with her husband, and would

not live with him under any circumstances whatsoever. On the Thanksgiving preceding the separation of the parties the plaintiff had dinner with her married daughter and son-in-law, and on the same evening she went to a dance with the man in whose company her husband saw her in February, 1924. The son-in-law also testified that he had visited plaintiff more than a dozen times during a period of about a year following the separation, and that at no time during that period was she confined to her bed or even ill.

Plaintiff did not deny that she had been going out to dances, but insisted that her doctor had prescribed dancing as a means of recovering her health. However, no medical testimony was offered in support of this contention. Likewise her daughter testified that while the family lived in Bakersfield her mother got along pretty well. So far as the evidence discloses it, the plaintiff's home, while she resided in Los Angeles, consisted simply of an apartment in one of the hotels of that city and for which she paid a rental of about $55 per month.

These facts readily distinguish the action at bar from the case of *Bibb* v. *Bibb*, 39 Cal. App. 406 [179 Pac. 214, 216]. While the court there holds that, in order to prove desertion on the ground of the refusal of the wife to follow the husband to a new home, the evidence must show that he has chosen a particular abode and offered it to her, and must further show that it was a reasonable place for the family abode, that decision must be read in the light of the peculiar facts upon which it rested. As pointed out in the opinion rendered in the Bibb case, for an indeterminate but considerable time immediately subsequent to the wife's refusal to follow her husband to a suburb of the city in which she was then residing, the parties continued their customary matrimonial cohabitation as man and wife at the old abode. "By this equivocal conduct," said the court in the concluding sentence of its opinion, "he failed to present to her, clearly and definitely, the alternative of a compliance with his will to move to Hollywood, or to be deemed guilty of wilful desertion." There was no such conduct or acquiescence on the part of the husband in the present suit.

The case of *Vosburg* v. *Vosburg*, 136 Cal. 195 [68 Pac. 694], cited in the Bibb case as the authority for the general rule announced in the latter decision, also arose out of a very different state of facts. In the former case the evidence showed that the parties had lived for years in a suitable home belonging to the wife, among her friends, and that the husband's choice of a different home was not made in good faith, and that his offer of a home elsewhere was not made until, as the court expressed it, "long after the lapse of time which ripened his desertion of her into a cause of action for divorce."

 Bishop, in the second volume of his work on Marriage and Divorce, at page 597, says: "It is immaterial which of the married parties leave the marital home, the one who intends bringing the cohabitation to an end commits the desertion."

In *Hudson* v. *Hudson*, 59 Fla. 529, 532 [138 Am. St. Rep. 141, 143, 21 Ann. Cas. 278, 279, 29 L. R. A. (N. S.) 614, 616, 51 South. 857], the supreme court of Florida, in applying the foregoing doctrine, said, "The party who drives the other away is the deserter, and a wife may drive her husband away."

 So, in the instant case it can be said that the wife drove her husband away. The evidence leaves little, if any, doubt that the wife had thrown off everything like allegiance and duty to her husband. In a sense, it might be said that the wife forced the separation because the husband would not permit her to usurp his rights. In the light of the testimony before it, the trial court might very well have concluded that the excuse offered by the wife for not residing with her husband in Bakersfield, namely, her alleged poor health, was a mere subterfuge. When in the spring of 1924 she left the apartment which up to that time had been her place of abode, and deliberately concealed her new address from her husband, the wife demonstrated in unmistakable fashion that she was determined to assert her complete emancipation and independence of her husband. His efforts to induce her to reside with him following her secret change of residence only resulted in strengthening her determination to separate from him. The evidence establishes a clear case of desertion on her part.

The judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.