ESTELLE BIENVENU, Wife of JULES BUISSON, *v.* HER HUSBAND.

It is impossible to give a defamatory intention and effect to epithets applied by a husband to his wife, when no one was present but the spouses themselves, although such epithets would have had much gravity had they been uttered in the presence of any third person

Facts which might have given ground for a separation from bed and board, are extinguished by a reconciliation. C. C. Art. 149.

It is only where a subsequent cause is proved to have arisen, sufficient for the basis of the action of separation, that Article 150 C. C. will entitle the plaintiff to urge a cause precedent to the reconciliation.

A reconventional demand on the part of defendant for a separation on the ground of abandonment, is not admissible. A particular form of procedure is required by the Code for obtaining a decree of separation on this ground, and to that form the defendant must have recourse for relief.

APPEAL from the Third District Court of New Orleans, *Duvignaud*, J. *P. Soulé* and *C. Bienvenu*, for plaintiff. *H. Dugué*, for defendant and appellant.

BUCHANAN, J. The plaintiff sues for separation of bed and board, upon the allegations that her husband has on various occasions exhibited a violent and quarelsome disposition; that he has cursed, insulted, outraged and defamed plaintiff; that he has cruelly and inhumanly abused, insulted and threatened her children, by a former marriage; that the conduct of her husband has rendered their living together entirely insupportable; and that she has taken refuge at the house of her father, where she now resides.

The proof is very far short of these grave allegations. It may be summed up in three facts:

1. *Mrs. Buisson* complained to her mother, that her husband, in a quarrel which had occurred between themselves, when nobody was present, had permitted himself to apply to her three epithets, which are certainly among the worst and the most defamatory, that the French language affords. When plaintiff made this complaint to her mother, she had abandoned the conjugal domicil, and was at the house of a married sister. Plaintiff's mother, thereupon sought an interview with her son-in-law, whom she reprimanded for the gross and insulting language addressed to his wife. Defendant confessed that he had used the words attributed to him by his wife, excused himself on the ground of having been in a passion when he spoke them; professed repentance, and begged forgiveness. The parties were reconciled, and plaintiff returned to her husband's house.

2. Subsequently to the occurrence just related, and five months before the institution of this suit, the defendant, in the presence of the mother and the sister of his wife, declared that he had given his wife money to buy trifles. Plaintiff denied that he had done so. Whereupon defendant became furious, shook his fist in his wife's face, caught himself by the hair with both hands, and left the room. The witness of this scene remarks, that it was true defendant had given his wife the money, as alleged by him, and that her denial of the fact was a joke—(une plaisanterie.)

3. The third fact, which goes to make up plaintiff's case, we will give in the words of her sister and witness:

"Witness asked defendant, if it was true that he had said, that he would not have his well enclosed, in order that he might see the children of his wife drowned therein, and swollen like toads. Defendant confessed to her that he had said so, but that it was in a moment of anger."

We do not find, in the facts recapitulated, any sufficient foundation for a judgment of separation of bed and board. The parties are both very young; are proved by their own witnesses to be of hasty temper, although of good hearts, and their quarrels are the quarrels of children. The epithets applied by the defendant to the plaintiff on one occasion, would have had much gravity, had they been uttered in the presence of third persons. But spoken, as they were, when no one was present but the spouses themselves, it is impossible to give them a defamatory intention and effect. And if the impression which they produced upon the plaintiff, was so painful, as to make her quit the conjugal roof—a circumstance natural enough in a lady of refined manners and education—yet a reconciliation followed, almost immediately, upon acknowledgment of his error, made by the husband. He solicited the forgiveness of his wife, according to the witnesses, in a manner which displayed, most unequivocally, his profound contrition; and that forgiveness was graciously accorded him. This first and most serious ground of plaintiff's action was, therefore, extinguished by the reconciliation. C. C. 149.

And as no subsequent cause, which we can regard as at all sufficient for a basis of the action, is proved to have arisen, the Article 150, which otherwise would have availed to entitle the plaintiff to urge the precedent cause at this late date, has no application to the present case. The doctrine of Marcadé, on this point, vol. 1, p. 606, No. 767, paragraph 2, and No. 768, paragraph 2, appears to us contrary to the intention of the lawgiver, as manifested in the Articles of the Code.

Defendant demands a separation for abandonment, by way of reconvention. A particular form of proceeding is required by the Code, for obtaining a decree of separation on this ground. To that procedure, the defendant must have recourse for relief.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed; that the demands of plaintiff and defendant be rejected, without prejudice to the right of defendant to proceed against plaintiff, in legal form, for abandonment of the conjugal domicil. And it is lastly ordered, that the costs of suit be equally borne by plaintiff and defendant, with the exception of those of appeal, which are to be paid by plaintiff.