BRUNOT, J.
 

 This is a suit for separation from bed and board on the ground of public 'defamation of the plaintiff. From a judgment as prayed for in the petition, the defend•ant appealed.
 

 The plaintiff and defendant are natives of New Orleans. Both were employees of the United States government, and were assigned to work in different departments of an agricultural station which is lQcated at Tallulah, La. They were married some time ■during the month of March, 1926.
 

 The marriage was of short duration. The petition alleges that, although plaintiff was .a dutiful wife and had always conducted .■herself properly, the defendant, without cause or provocation, publicly defamed her character to such an extent, that their marital relations could no longer exist and she was compelled to remove to another abode where she wras residing when this suit was filed.
 

 The suit was met by a plea to the jurisdiction of the court and by an exception of vagueness.
 

 The plea to the jurisdiction alleges that New Orleans is the legal and matrimonial ■domicile of the defendant; that he was born and reared and has always resided in that ■city; that the marriage was celebrated there; that his assignment to Tallulah and his present residence there is only temporary; ■and that he has never abandoned his domicile in New' Orleans and has never intended to do ■so.
 

 The exception of vagueness is leveled at the paucity of detail in the allegations in paragraphs 3 and 5 of the petition, wherein the plaintiff's cause of action is stated.
 

 The transcript shows that the plea to the jurisdiction of the court was regularly assigned and tried, and, after the testimony taken thereon was closed, the defendant withdrew his plea and filed an answer to the suit, thus waiving his exception of vagueness.
 

 -The answer admits the marriage and that no children were born of the marriage; but it specifically denies all of the grounds alleged in the petition as a cause or causes of action. On these issues the case was tried, and it was submitted on the testimony taken on the trial of the plea of prescription, supplemented by testimony taken on the trial of the case on the merits.
 

 The testimony shows that it was the custom of the plaintiff and defendant, when their day’s work was concluded, to return to their home together. On the evening preceding their separation, the plaintiff left the agricultural station a short time before the defendant finished his work. ‘ Upon returning home, the defendant found the plaintiff in the act of changing her underclothing. He immediately became suspicious and made an examination of the garments she had removed from her person. Finding blood upon these garments, he charged her with infidelity and demanded an explanation. On the following day he called at the home of Mr. Melville Kearney, during that person’s absence, related to Mrs. Kearney the discovery he had made, and stated that he had reasons which convinced him that his wife and Mrs. Kearney’s husband were guilty of adultery.
 

 It is possible to hurl a fire brand into a sage field without resultant injury. It may fall upon a barren.spot and harmlessly burn itself out, but dire consequences are inevitable when the wizard of evil incites certain human impulses. We will therefore pass, without comment, what immediately happened.
 

 The evidence shows that the statements and charges the defendant made to Mrs. Kear
 
 *1025
 
 ñey were later repeated by him to Mr. and Mrs. Kearney in tbe presence of the plaintiff; and, after tbe defendant was apparently convinced that Mr. Kearney was not chargeable with illicit relations with his wife, and after Mrs. Kearney had tried to convince the defendant that the blood on his wife’s garments was nothing more than what any normal young woman' mhy expect every month, he persisted in his suspicions, insisted to Mr. Kearney, out of the presence of his wife, that she had been guilty of adultery with some one, and wrote a letter to her mother, in which he repeated all of the accusations he had previously made against his wife to the Kearneys. This is the substance of the proof.
 

 Two defenses are urged in the appellant’s brief. One is that the defamation was not
 
 public,
 
 within the meaning of article 138 of the Civil Code; and the other is that it was not made
 
 wantonly and maliciously.
 

 The case of Ashton v. Grucker, 48 La. Ann. 1194, 20 So. 738, is relied upon as supporting the first defense. In that case, quoting from the syllabus, the court held that:
 

 “The utterances of a wife to a confidential friend while seeking-sympathy and advice and when smarting under what she reasonably considered to be wrongs received at the hands of her husband by neglect of herself and indiscreet, injudicious, and excessive, if not criminal, attentions to some other woman, will not be held to be ‘public defamation.’ ”
 

 We fail to see how the Ashton-Grucker Case can be considered as decisive of, or as having any application to the case before us. The facts of the two eases are entirely different. In. the cited case the utterances complained of were made to a confidential friend, by a wife who had
 
 reasonable grounds
 
 for considering herself wronged by her husband, and they were made for the sole purpose of seeking sympathy and advice. The facts of this case are stated supra, and those facts are controlling. In our view, this case comes within the rule announced in the case of Cass v. Cass, 34 La. Ann. 611, in which case the court said:
 

 “The argument, that to constitute defamation, within the meaning of the Code, the offensive epithets or words must have been uttered in public, does not meet with our sanction. We hold that the charge of adultery against a wife by her husband, made in the presence of her servants, and of a visitor, or to another person at the latter’s house, as shown in this reecord, does constitute a public defamation, as contemplated by our law, for which the injured wife is entitled to the protection- of the courts. Bienvenu v. [Her Husband] Benson, 14 La. Ann. 386.”
 

 In support of the second defense, viz. that malice is an indispensable ingredient of public defamation, defendant relies upon the case of Homes v. Carrier, 16 La. Ann. 94. This case grew out of a. suit instituted by Mrs. Carrier against her husband, Homes, for divorce on the ground of adultery. When Mrs. Carrier’s suit was finally dismissed, Homes sued her for a separation from bed and board, and assigned as his cause of action, public defamation, based upon the allegation of adultery made in the petition filed in the divorce suit. In applying the law to the facts stated, the court said:
 

 “The charge of adultery, preferred by the wife against the husband,, to serve as a basis for a judgment of divorce, does not, of itself, amount to a defamation, upon the failure of the former to sustain the allegation by proof. If the accusation be not wanton or malicious, although unfounded in point of fact, it cannot, with propriety, be said that there was a public defamation.”
 

 We cannot concede that the Homes-Carrier Case sustains defendant’s contention that malice is an essential ingredient of public defamation. In our view that decision merely absolves from blame a spouse, who, under a mistaken sense of outrage, appeals, in good faith, to the courts of the land for remedy and relief.
 

 From the testimony in this case, which we have only summarized, we are convinced that the defendant did not act in good faith, and
 
 *1027
 
 that he was not seeking the sympathy and advice of a confidential friend when he called upon Mrs. Kearney and informed that lady that her husband and his wife were accomplices in adultery. It is inconceivable to us that such an act could be construed as indicating any desire on defendant’s part for sympathy or advice, or that his utterances were intended to be regarded as a secret.
 

 We think the testimony as a whole shows that the judgment appealed from is correct, and it is therefore affirmed, at appellant’s cost.
 

 O’NIELL, O. J., dissents.