460 So.2d 634 (1984)
Helen H. LAMB, Plaintiff and Appellant-Appellee,
v.
W.C. LAMB, Defendant and Appellee-Appellant.
No. 83-897.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
On Rehearing November 26, 1984.
Writs Denied January 25, 1985.
*636 Bean & Rush, Warren D. Rush, Lafayette, for defendant and appellee-appellant.
Vance R. Andrus, Caliste Beard, Jr. and J. Michael Artigue, Lafayette, for plaintiff and appellant-appellee.
Before DOMENGEAUX, CUTRER and DOUCET, JJ.
DOUCET, Judge.
This appeal involves a determination of whether the dissolution of the marriage between Helen Lamb, plaintiff-appellee, and W.C. Lamb, defendant-appellant, was caused by the fault of Mrs. Lamb, thereby precluding her from receiving permanent alimony pursuant to La.C.C. Art. 160. The other issue of this appeal is the validity of a pre-marital contract between the parties that waived a community property regime and established separate property regimes for each spouse. These issues arise from the suit for separation from bed and board filed by the plaintiff-appellee and a divorce proceeding instituted by the defendant-appellant. These cases were consolidated for trial, remain so on appeal, and the issues in both cases will be addressed in this opinion, although a separate opinion will be rendered in the companion case, 460 So.2d 641.
The plaintiff and the defendant executed the pre-marital contract on May 21, 1971, and were then married on May 26, 1971. After approximately ten years of marriage, Mrs. Lamb sued for a separation from bed and board on February 10, 1981. Mr. Lamb subsequently filed a petition for absolute divorce on January 18, 1982, pursuant to LSA-R.S. 9:301 on the basis that the parties had been living separate and apart for one year. Mrs. Lamb reconvened seeking to have the pre-marital contract declared without effect because of vices in her consent and non-compliance with the formal requirements for such a contract. Prior to trial, on April 8, 1981, the trial court awarded Mrs. Lamb alimony pendente lite in the amount of $3,500.00 per month. See 427 So.2d 899 (La.App. 3rd Cir.1983) and 418 So.2d 688 (La.App. 3rd Cir.1982). Mrs. Lamb's separation suit was consolidated with Mr. Lamb's petition for a divorce and a trial was subsequently conducted on the matter.
The evidence at the trial was long and exhaustive. A brief summarization is in order. Mrs. Lamb began by attempting to prove that she was not at fault as a reason for the dissolution of the marriage in order to be entitled to permanent alimony. The crux of this line of evidence consisted of the testimony of Mrs. Lamb who testified that she tried very hard to be a good and dutiful wife in all respects. Mrs. Lamb conceded that her behavior was not ideal at all times but that in general she was a good wife. Mrs. Lamb's daughter corroborated Mrs. Lamb's version of several incidents that could have been dispositive on the issue of fault. Mr. Lamb sought to rebut this testimony with evidence designed to prove that Mrs. Lamb defamed her husband and treated him cruelly to such an extent that their common life together became insupportable. Several witnesses testified that on several occasions Mrs. Lamb publicly defamed her husband *637 with obscene language causing her husband to be greatly embarrassed. This evidence was also introduced in attempts to prove cruel treatment of Mrs. Lamb by Mr. Lamb. In addition other testimony was heard to prove that Mrs. Lamb constantly verbally abused Mr. Lamb as the principal aspect of cruel treatment by Mrs. Lamb. In particular, the maid corroborated Mr. Lamb's statement that Mrs. Lamb incessantly argued with Mr. Lamb every morning while he silently endured these alleged tirades.
Another aspect of Mrs. Lamb's alleged cruel treatment is her neglect of household chores. Both Mrs. Lamb and their maid testified that Mrs. Lamb never cleaned the house and would rarely prepare meals. Mrs. Lamb conceded that she was inept at housework but that this neglect was not a deliberate effort to provoke her husband. Another complaint of Mr. Lamb was that his wife would often begin projects to redesign the interior of the house but would always leave them unfinished giving the house the constant appearance of disrepair.
The last aspect of the alleged cruel treatment was the alleged refusal by Mrs. Lamb to engage in sexual relations with her husband. It is undisputed that the parties rarely if ever engaged in sexual relations during the six to eight month period immediately before Mr. Lamb moved from the matrimonial domicile. Mrs. Lamb testified that sex was not requested while Mr. Lamb testified that his advances were refused.
The other issue litigated at the trial is the validity of the pre-marital contract. The evidence on this issue indicated that Mrs. Lamb was confused, nervous and resentful when it was executed. Mrs. Lamb did not have an attorney present nor did she read the contract. Mrs. Lamb testified that she knew the legal consequences of the contract but thought that its duration was for only a year or two. Mrs. Lamb testified that she was more or less coerced into signing the contract and that she was promised lifetime support as an inducement to sign the contract. Both Mr. Lamb and his attorney, who was the executing notary, deny these last two allegations. Finally, Mrs. Lamb testified that the witnesses were not present when she signed the agreement. In their depositions the witnesses testified that they were in fact present when the contract was executed, thereby satisfying the formal requirements for a valid pre-marital contract.
The trial court rendered a judgment on the consolidated cases. Mr. Lamb was awarded an absolute divorce on the basis of LSA.R.S. 9:301 and Mrs. Lamb's separation suit was dismissed as being moot. The trial court then concluded that Mrs. Lamb's argumentative nature was not fault in a sufficient degree to preclude an award of permanent alimony. In its reasons for judgment the court said "Testimony was presented concerning two separate incidents in a hotel lobby in Miami and in a restaurant in Lafayette. Although the testimony indicated that Mrs. Lamb's deportment and conduct were less than ideal, the evidence falls short of either defamation or cruel treatment." The trial court also found that the couple's high financial standing excused Mrs. Lamb's neglect of household chores because they could afford to regularly dine out and could also afford the services of a maid. With respect to the lack of sexual relations, the trial court concluded that the reason was a mutual abstention rather than a refusal by Mrs. Lamb. The trial court explained that these were the only allegations that could justify a finding of fault and it concluded that these allegations were not sufficiently substantial for such a conclusion and awarded Mrs. Lamb alimony. With respect to the pre-marital contract, the trial court concluded that it was valid in form and that there were no vices of consent that would justify vitiating the agreement.
The issues on this appeal are whether the trial court erred in upholding and enforcing the pre-marital contract. Secondly, whether the trial court was manifestly erroneous in its conclusion that Mrs. Lamb was not guilty of fault sufficient to preclude an award of permanent alimony.
*638 Mrs. Lamb contends that the pre-marital contract between her husband and herself is invalid because it was executed in the absence of the signed witnesses. The evidence does not support this contention. La.C.C. art. 2331 says that a pre-marital contract must be in authentic form executed before a Notary and two witnesses. Both witnesses to the agreement, Betty O'Conner Billeaud and Louella B. Ransonet, testified in their depositions that they were present when the instrument was executed. This testimony is corroborated by Mr. Warren Rush who was the executing notary of the contract. The only evidence in the record to contradict this testimony is the testimony by Mrs. Lamb that the witnesses were not present when the contract was actually executed. It should be noted that Mrs. Lamb was confused, nervous and resentful when she signed the agreement and her credibility is effected accordingly. The trial court was satisfied that the witnesses were present when the contract was executed and that all of the other formal requirements were complied with. This factual conclusion is not clearly wrong and should not be disturbed on appeal.
Next, Mrs. Lamb contends that the pre-marital contract is defective because of a vice in her consent. She claims that her consent was given in error because she thought that the term of the contract was only "for a year or two" rather than for the duration of the marriage. La.C.C. art. 1819 says that there is no contract where consent has been obtained by error or fraud. La.C.C. art. 1820 provides that there are two types of error; error in fact and error in law. Error in fact proceeds either from ignorance of that which really exists or the mistaken belief in the evidence of that which has none. La.C.C. art. 1821. But not every error will invalidate a contract but only error as to the principal cause of the contract. When there are several causes then the principal cause is called the motive and means that consideration without which the contract would not have been made. La.C.C. arts. 1823, 1825. Mrs. Lamb contends that her mistaken belief about the duration of the contract is an error in fact concerning the principal cause of the contract and that she would not have contracted had she known otherwise, thereby justifying the vitiations of the pre-marital agreement. This contention is without merit. Mrs. Lamb's own testimony makes it unquestionably clear that she knew that the pre-marital agreement established separate property regimes. This was the principal cause of the contract because the reason for so contracting was to prevent the operation of Louisiana's community property law. The term of the contract was not the motive or the principal cause therefore a mistake concerning the term or duration of the contract is not of sufficient consequence to vitiate the contract.
Furthermore, Mrs. Lamb did not read nor request a detailed explanation of the pre-marital agreement. In Louisiana Savings Association v. Trahan, 415 So.2d 592 (La.App. 3rd Cir.1982) this court said that a party may not avoid the provisions of a contract which he signs but fails to read or have explained to him. Mrs. Lamb should have read the proposed agreement and the fact that she was confused and nervous is no excuse. If Mrs. Lamb had serious reservations about the proposed contract, then her recourse was not to sign it. Mrs. Lamb cannot avoid an unpleasant provision of the pre-marital agreement because she failed to read the contract.
In the alternative Mrs. Lamb seeks a share of Mr. Lamb's estate on the basis of the principle of unjust enrichment and estoppel. The unjust enrichment claim is based on the allegation that Mrs. Lamb contributed to whatever wealth that Mr. Lamb accumulated during the course of the marriage. The only alleged enrichment that could be supported by the evidence is a parcel of property in Mr. Lamb's estate that Mrs. Lamb chose for a homesite in the future. Mr. Lamb purchased the property with his funds. This one allegation hardly constitutes the type of enrichment contemplated by the theory of unjust enrichment. Scott Truck and Tractor Company of Alexandria v. Daigre, 346 So.2d 1297 (La. *639 App. 3rd Cir.1977). The contention that Mr. Lamb acquired wealth at Mrs. Lamb's expense is without merit.
Mrs. Lamb's estoppel argument is also without merit. There are three elements to estoppel: (1) A representation by conduct or word; (2) Justifiable reliance; and (3) A change in one's position to one's detriment. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975). The representation alleged by Mrs. Lamb is that Mr. Lamb promised to forever provide for her as an inducement to sign the pre-enacted contract. Mr. Lamb denies making this promise except to the extent that he would provide for Mrs. Lamb while she remained his wife. The trial court apparently concluded that no such representation was made as Mrs. Lamb described it. Then, the first element of the estoppel claim is unsatisfied. Furthermore, Mrs. Lamb was not justified in relying on what she believed was a promise by Mr. Lamb to provide for her regardless of their marital status. Such a proposition defies reason and no reasonable person would justifiably rely on such a promise for his well being. Finally, there is no evidence on the precise detriment incurred by Mrs. Lamb when she relied on the alleged promise. Estoppels are not favored in our law. Rodden v. Davis, 293 So.2d 578 (La.App. 3rd Cir. 1974). Therefore all estoppel claims must be examined carefully and strictly. A careful and strict examination of this estoppel claim reveals that Mrs. Lamb did not sustain the heavy burden of proving all of the elements of an estoppel claim.
The trial court was correct in its judgment to uphold and enforce the pre-marital contract thereby precluding the evidence of a community property regime of the parties. This part of the trial court's judgment is affirmed. The remaining issue to be addressed is whether the trial court was correct in holding that Mrs. Lamb is entitled permanent alimony pursuant to La. C.C. art. 160.
The sole basis for this divorce action was pursuant to LSA-R.S. 9:301 which authorizes the granting of an absolute divorce if the parties have been living separate and apart for one year prior to the institution of the suit. Fault by either party is not an issue in this type of divorce. However, when one party seeks permanent alimony pursuant to La.C.C. art. 160 then fault becomes an issue but only in the determination of whether the party seeking alimony is so entitled. In order to be entitled to permanent alimony, the party who is seeking the alimony has the burden of proving that he or she is without fault in causing the dissolution of the marriage and also that he or she is in necessitous circumstances and in need of support. La.C.C. art. 160, Schexnayder v. Schexnayder, 424 So.2d 516 (La.App. 5th Cir.1982); Silas v. Silas, 399 So.2d 779 (La.App. 3rd Cir.1981). Therefore Mrs. Lamb had the burden of proving that she was free from fault and that she was in legitimate need of financial support.
The appellant argues that the trial court was clearly wrong in its factual conclusion that Mrs. Lamb met her burden of proving that she was not at fault in a sufficient degree that would preclude her from receiving alimony. In support of this argument the appellant contends that Mrs. Lamb's conduct during the marriage constitutes cruel treatment in three respects. First, Mr. Lamb contends that Mrs. Lamb's verbal abuse of her husband constitutes cruel treatment. Second, the appellant argues that the neglect of household chores by Mrs. Lamb constitutes cruel treatment. The last aspect of cruel treatment alleged by Mr. Lamb is Mrs. Lamb's refusal of sexual relations. Another type of fault on Mrs. Lamb's part argued by Mr. Lamb is that his wife defamed him.
All of these contentions are grounds for fault that would preclude an award of permanent alimony pursuant to La.C.C. art. 160. The grounds for separation enumerated in La.C.C. art. 138 are the criteria to be used in determining whether a spouse is at fault for the purpose of determining whether he or she is entitled to permanent alimony pursuant to La.C.C. art. 160. Adams v. Adams, 389 So.2d 381 (La.1981). *640 The grounds found in La.C.C. art. 138 that are at issue in this case are defamation and cruel treatment that renders the common life insupportable.
With respect to defamation it is necessary to prove that the false charge was not made in good faith and publicly to a person to whom the accuser has no legitimate excuse to talk about the subject of the accusation. Watson v. Watson, 209 So.2d 528 (La.App. 2nd Cir.1968). In the case at bar no particular accusation was alleged but merely a series of insults made publicly. The trial court was correct in concluding that the evidence fell short of establishing defamation.
In order for cruel treatment to be considered fault it must render the common life together insupportable. La.C.C. art. 138; La.C.C. art. 160. Furthermore, this fault must be an independent and proximate cause of the dissolution of the marriage. A wife is not deprived of alimony simply because she was not totally blameless in the marital discord. Harrington v. Campbell, 413 So.2d 297 (La.App. 3rd Cir. 1982). The issue of fault in the dissolution of a marriage is factual and the trial court's resolution of this issue will not be disturbed unless it is clearly wrong. Pearce v. Pearce, 348 So.2d 75 (La.1977). After reviewing the record we find that although Mrs. Lamb's conduct was not ideal, her conduct was not fault to a sufficient degree that rendered the parties' common life together insupportable.
Verbal abuse can constitute cruel treatment if it is particularly vicious and persistent to the extent that it renders the common life insupportable. However, mutual incompatibility, fussing and bickering cannot constitute cruel treatment. Loyd v. Loyd, 336 So.2d 912 (La.App. 2nd Cir.1976). The record indicates that neither party was well disposed toward the other. This incompatibility was manifested by the bickering and fussing that Mr. Lamb complained of. Mrs. Lamb is not totally blameless in this matter, but neither was her conduct an independent or proximate cause of the marital discord. The trial court concluded that Mrs. Lamb's role in these arguments was not a sufficient reason to blame her for causing the parties' life together insupportable. The trial court's conclusion that Mrs. Lamb's conduct was not fault is not clearly wrong and therefore will not be disturbed on appeal. Pearce,supra. The trial court also concluded that the neglect of household chores was not fault to any significant degree. The trial court noted that the parties' social and financial standing more or less excused Mrs. Lamb's domestic ineptitude because a maid was easily affordable as well as dining out regularly. This factual conclusion will not be disturbed on appeal because it is not clearly wrong. Neglect under these circumstances did not render the parties' life together insupportable.
Finally, the absence of sexual relations can be ill treatment that constitutes fault if it is caused by the unjustified and persistent refusal by one spouse. Saucier v. Saucier, 357 So.2d 1378 (La.App. 4th Cir.1978). Mr. and Mrs. Lamb's testimony on this issue is in direct contradiction. Mrs. Lamb claimed that no advances were made while Mr. Lamb claims that his advances were refused. The trial court resolved this factual issue in favor of Mrs. Lamb and concluded that the cause was a mutual abstention. This conclusion is supported by the evidence therefore it will not be disturbed. Watson v. Watson, 442 So.2d 1310 (La.App. 3rd Cir.1983). In sum, the trial court's decision that Mrs. Lamb met her burden of proving that she was not at fault to a degree that would preclude her from receiving alimony is affirmed.
Although Mrs. Lamb met her burden of proving that she is free from fault, she must also prove her need for financial support. Schexnayder, supra; Silas, supra. This issue was not directly addressed at the trial and no conclusions on Mrs. Lamb's financial situation were drawn. This inquiry requires the court to look into the income and property of the spouse requesting alimony before making its determination on entitlement thereto. Moss v. Moss, *641 379 So.2d 1206 (La.App. 3rd Cir.1980). Earlier in the proceedings an inquiry was made to ascertain Mrs. Lamb's need for alimony pendente lite pursuant to La.C.C. art. 148, but the criteria for determining the need for permanent alimony is different from that of temporary alimony. Permanent alimony is in the nature of a pension while alimony pendente lite is based on the husband's obligation to support his wife during the marriage. Wasson v. Wasson, 402 So.2d 718 (La.App. 1st Cir.1981). Therefore a new inquiry must be made. This case is remanded for the purpose of determining Mrs. Lamb's need for permanent alimony pursuant to La.C.C. art. 160.
The trial court's judgment is affirmed for the above reasons. The case is remanded in order to ascertain Mrs. Lamb's financial need for permanent alimony. Both parties are to bear the costs of this appeal.
AFFIRMED AND REMANDED.

ON REHEARING
PER CURIAM.
In our original decision we affirmed the trial court's decision that Mrs. Lamb was not at fault in causing the dissolution of her marriage to W.C. Lamb, but we remanded the case for the purpose of ascertaining Mrs. Lamb's financial need for permanent alimony because there was no evidence in the record concerning this issue. Subsequent to the trial court's judgment, Mrs. Lamb filed a rule seeking permanent alimony wherein her financial need was addressed. Therefore, the need to remand the original trial court judgment ceases to exist. Accordingly, we grant the rehearing and hereby order the deletion of that portion of our opinion entitled HELEN LAMB v. W.C. LAMB, Docket No. 83-897, that orders the remand of the case for the purpose of ascertaining Mrs. Lamb's financial need for permanent alimony. The remaining portion of our opinion remains in effect.