WICKER, Judge.
This appeal arises from a judgment of separation from bed and board finding plaintiff, Kathryn Veron Luquette and defendant, Carlton Joseph Luquette mutally at fault.
The facts show that the parties were married in 1961 and that three children were born of the marriage. At the time of trial, two of the children, Yvonne and Jeffrey, had attained their majority.
On March 1, 1985, plaintiff, Kathryn Lu-quette filed for a separation from bed and board on the grounds of abandonment. Defendant, Carlton Luquette filed an answer and reconventional demand seeking a separation based on cruel treatment.
Trial was held on August 20,1985 and on September 30,1985 judgment was rendered granting the separation based on the mutual fault of the parties.
Subsequently, plaintiff, Kathryn Lu-quette, perfected an appeal of the judgment alleging as error the finding of fault on her part.
Article 138 of the Louisiana Civil Code reads in part as follows:
“Separation from bed and board may be claimed reciprocally for the following causes ...
(3) on account of the habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of *741 one of them towards the other, if such intemperance, or ill-treatment is of such a nature as to render their living together insupportable ...
(5) of the abandonment of the husband by his wife or the wife by the husband.”
Article 141 of the Louisiana Civil Code reads as follows:
“A separation from bed and board shall be granted although both spouses are mutually at fault in causing the separation. In such instances, alimony penden-te lite may be allowed but permanent alimony shall not be allowed thereafter following divorce.”
The evidence shows that on November 26, 1984, appellee left the marital domicile allegedly because of appellant’s mental cruelty to him.
Appellee testified that although a good housekeeper, cook and mother, appellant was vindictive and emotionally volatile. He stated that he and his wife argued constantly during their marriage and that appellant’s jealousy and dislike of his hobbies forced him to relinguish them. Specifically, he related that her anger forced him to discontinue duck hunting and to sell a weekend camp he owned in conjunction with his father-in-law.
As a further example of appellant’s alleged cruelty, he testified that appellant refused sexual intercourse when she was angry and that she slept on the sofa for weeks and months at a time. He claimed that she told him on numerous occasions that she hated him and that “he could leave if he didn’t like it”. Appellee said that appellant’s vindictiveness caused her to refuse to go to his company Christmas parties out of spite on two or three occasions; that on one occasion she released a horse he owned from its corral to roam the neighborhood; and that on another occasion she stuffed the house locks with thread to prevent him from entering. Appellee further informed the court that several years previously he and his wife separated for a short time.
Appellee’s testimony further revealed that after 19 years of employment in the insurance field, three years prior to the separation, the parties purchased her family’s grocery store. He maintained that at first both he and his wife worked in the store, but that appellant withdrew from the business because of their constant arguments regarding the management. Appel-lee also testified that his wife was highly emotional and that on one occasion he was forced to restrain her, causing bruises to her arm. After purchasing the store he said their relationship continued to worsen and that he finally left the domicile because he could not “take it anymore.”
After appellee departed the domicile the evidence shows that a friend of the family referred the parties to a marriage counsel- or. Both parties intended to attempt a reconciliation. The testimony showed that appellant attended several sessions and ap-pellee attended four times in January and February, 1985. During this period, appel-lee stated that rumors reached him that his wife was boasting that she was going to ruin his life and that she threatened to shoot him. He claimed that a gun was taken from his store during this period which was later returned by appellant in a bag with other items belonging to him.
Appellant at first denied the allegations related to the gun, the threats, and the horse incident, but on cross-examination admitted they occurred. Except for the gun incidents and the threats, she stated the alleged acts of cruelty occurred many years previously. Appellant blamed the incidents involving the gun and her threats on appellee’s life on the fact that she was depressed after appellee left the home.
In regard to the parties sexual relationship, appellant testified that appellee refused her on many occasions and that one month prior to his departure told her that “it wasn’t her fault and that maybe he should see a doctor”.
The adult daughter and son of the couple each testified respectively for the mother and father. Mrs. Veronica Molley, the parties’ 23 year old daughter, stated that she visited her mother at least once a week. *742 She affirmed that her parents argued, but thought it was due to problems with the store. She was surprised when her father left and testified that he later told her they couldn’t get along. However, she never discussed with her father the reason why he left the home and was unable to express an opinion at trial. However, she admitted that her father would never point out her mother’s faults to her.
Appellant’s final witness was her uncle, Donald Veron. He stated he had a friendly relationship with appellee and would visit the couple’s home on an average of once a month. Based on the behavior of both appellee and appellant he was of the opinion that the marriage was in trouble for some time prior to the separation. He said that after the parties separated he talked to appellant and was told she wanted to remain married to appellee. Mr. Veron claimed that on one occasion appellee, Mr. Luquette, told him the break-up wasn’t “her” (his wife’s) fault. On cross-examination, Mr. Veron said that appellee also told him that “it took two to fight.”
Mr. Wilfred J. “Fritz” Englade, a friend of the couple, testified on behalf of appel-lee. He stated that the marriage was stormy prior to the separation and that both parties started arguments on different occasions. Mr. Englade testified that he referred Mr. Luquette to a marriage counseling clinic and that it was Mr. Luquette who initiated the appointments at the clinic. Mr. Englade stated that appellee later indicated the counseling was useless and said that there was no longer any love left between the couple.
Yvonne Cunningham, a stocker at the supermarket owned by the parties, testified to the threats on appellee’s life made by appellant after the physical separation.
Finally, Jeffrey Luquette, the 19 year old son of the Luquettes’ testified for his father. He stated that at the time of the separation he was living at home and that both his parents appeared to initiate the arguments. He remembered his mother telling appellee that if he “didn’t like it he could leave anytime” on several occasions. Jeffrey Luquette also admitted that he continued to reside at home contributing nothing to his own support.
Based on facts as adduced at trial, the trial court determined that both parties were at fault. Generally, mutual incompatibility and/or petty bickering are not sufficient to constitute fault. Loyd v. Loyd, 336 So.2d 912 (La.App. 2nd Cir.1976); Boudreaux v. Boudreaux, 460 So.2d 722 (La.App. 3rd Cir.1984); Baham v. Baham, 456 So.2d 1032 (La.App. 5th Cir.1984). Furthermore, conduct occurring after the physical separation is irrelevant in determining fault in the physical separation. Benoit v. Benoit, 466 So.2d 561 (La.App. 5th Cir.1985). Cohabitation after mentally cruel treatment is usually construed as reconciliation. Souza v. Souza, 428 So.2d 1204 (La.App. 5th Cir.1983).
For the cruel treatment by appellant to constitute fault it must be of such a nature as to render living together insupportable. LSA C.C. Art. 138, 160. As stated in Lamb v. Lamb, 460 So.2d 634 (La. App. 3rd Cir.1984) writ denied 462 So.2d 1249 (La.1985);
“Furthermore, this fault must be an independent and proximate cause of the dissolution of the marriage. The wife is not deprived of alimony simply because she was not totally blameless in the marital discord. Harrington vs. Campbell, 413 So.2d 297 (La.App. 3rd Cir.1982). The issue of fault in the dissolution of a marriage is factual and the trial court’s resolution of the issue will not be disturbed unless it is clearly wrong. Pearce v. Pearce 348 So.2d 75, (La.1977).”
The Court went on to say:
“Verbal abuse can constitute cruel treatment if it is particularly vicious and persistent to the extent it renders the common life insupportable. However, mutual incompatibility, fussing, and bickering cannot constitute cruel treatment. Loyd vs. Loyd, 336 So.2d 912 (La.App. 2d Cir. 1976).” at page 640
*743 On the other hand, this court in Souza, supra, recognized that situations exist wherein a husband’s failure to abandon his wife and family may be mere forbearance and will not be construed as reconciliation or condonation of the prolonged cruel treatment. We believe that principle enunciated in Souza exists in the instant case and that appellant demonstrated a pattern of vindictive behavior constituting cruel treatment. Thus, we find that the trial court did not err in finding appellant at fault.
Accordingly, after a review of the law and evidence, the judgment of the trial court is hereby affirmed.
Costs to be paid by appellant.
AFFIRMED.