525 So.2d 69 (1988)
Ethel Rae Cormier THIBODEAUX, Plaintiff-Appellee,
v.
Eugene THIBODEAUX, Defendant-Appellant.
No. 87-33.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
*70 Ethel C. Thibodeaux, in pro. per.
Eugene Thibodeaux, in pro. per.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOUCET, Judge.
Defendant, Eugene Thibodeaux, appeals from a judgment awarding plaintiff, Ethel Rae Cormier Thibodeaux, permanent periodic alimony at the rate of $150.00 per month.
Plaintiff and defendant were married in June 1982. There were no children born of the marriage although plaintiffs two children from a previous marriage resided with the parties. Plaintiff and defendant physically separated in August 1985 with the plaintiff subsequently filing suit for separation from bed and board on September 4, 1985. Defendant reconvened seeking a separation from bed and board, and, later, by a supplemental petition, a divorce. The trial court granted the divorce, apparently based upon the parties having lived separate and apart for a year pursuant to La. R.S. 9:301. In that judgment of divorce the trial court also ordered defendant to pay permanent alimony to the plaintiff in the amount of $150.00 per month.
On appeal defendant contends that the trial court erred in not finding that plaintiff was at fault in causing the dissolution of the marriage, thus precluding her from receiving *71 permanent alimony. In the alternative, defendant asserts that the trial court erred in finding that the plaintiff did not have sufficient means for support such as would entitle her to an award of $150.00 per month in permanent alimony.
Permanent periodic alimony may be awarded a spouse who has not been at fault and has not sufficient means for support. La.C.C. art. 160; Lamb v. Lamb, 460 So.2d 634 (La.App. 3rd Cir.1984); Silas v. Silas, 399 So.2d 779 (La.App. 3rd Cir.1981). The burden of proof is on the party seeking alimony to show that he or she is without fault in causing the dissolution of the marriage and that he or she is in necessitous circumstances and in need of support. Lamb v. Lamb, supra. A trial court's finding of fact on the issue of fault will not be disturbed on appeal unless it is clearly wrong. Pearce v. Pearce, 348 So.2d 75 (La.1977); Boudreaux v. Boudreaux, 460 So.2d 722 (La.App. 3rd Cir.1984); Tate v. Tate, 442 So.2d 1379 (La.App. 3rd Cir.1983).
The grounds for separation as enumerated in La.C.C. art. 138 are the criteria to be used in determining whether a spouse is at fault for the purpose of determining whether he or she is entitled to permanent alimony pursuant to La.C.C. art. 160. Adams v. Adams, 389 So.2d 381 (La.1980); Lamb v. Lamb, supra.
Defendant bases his allegations of fault on (1) cruel treatment by his wife, C.C. art. 138(3); and/or (2) her public defamation of him, C.C. art. 138(4). C.C. art. 138(3) provides that the cruel treatment by one of the spouses towards the other must be of such a nature as to render their living together insupportable. In addition, the jurisprudence holds that the fault sufficient to preclude a spouse from receiving permanent alimony must be a serious and independent contributory or proximate cause of the dissolution of the marriage. Pearce v. Pearce, supra; Lamb v. Lamb, supra.
Defendant cites as cruel treatment accusations by his wife that he was dating other women. The defendant testified that almost every week his wife would accuse him of seeing other women, usually when he "came home late from work." Defendant flatly denied dating or seeing other women. Plaintiff testified that she suspected defendant was seeing other women and that she accused him of thisbut not every week. Plaintiff and her thirteen-year-old daughter both testified that, as they were returning from church services one evening at approximately 10:00 p.m., they happened to see the defendant and a former girlfriend of his coming out of the front door of her residence. Defendant denied this allegation. Plaintiff also admitted that she had accused defendant of dating her brother's girlfriend.
The parties physically separated when plaintiff and her two children moved out of the family home. This step was taken approximately one week after defendant began hiding the household cookware so that plaintiff could not prepare meals. This was never specifically denied by defendant. There was evidence that shortly before plaintiff left, defendant disconnected the air conditionerthis was in the month of August. Defendant claimed that he only did this during the day when no one was home to save on his utility bill. However, plaintiff claims that defendant told her that he could not afford to support her and his girlfriend and that he wanted her out of the house. In other words, plaintiff claimed that defendant drove her out of the house. On a couple of occasions, plaintiff's son heard defendant tell his mother that he didn't want her in the home.
From this evidence the trial court concluded that the plaintiff was free from fault. The trial judge's reasons for this finding are not clear. However, from the evidence in the record before us we are unable to say that this conclusion of the trial court was clearly wrong. The record furnishes a basis for finding that the plaintiff's accusations of extra-marital activity were not totally unfounded and therefore would not constitute cruel treatment. A wife who observes her husband and his ex-girlfriend leaving her residence together at 10:00 p.m. is justified in having her suspicions aroused. Moreover, it appears that the reason for the marital breakup rests on the shoulders of defendant who by *72 his actions drove plaintiff from the family home. In addition, defendant testified at trial that he would welcome the plaintiff back but she refuses to return. Thus, by defendant's own testimony, the accusations made by his wife could not be considered a serious and independent contributory or proximate cause of the marital breakup.
Defendant next contends that the plaintiff publicly defamed him, and under La.C. C. art. 138(4), and the applicable jurisprudence, this constitutes fault sufficient to preclude her from receiving alimony. We will examine the issue of defamation even though, as we have discussed above with reference to alleged cruel treatment (accusations of infidelity), any public defamation could not, we feel, have been considered a serious and independent contributory or proximate cause of the marital breakup.
To establish a public defamation as contemplated in C.C. art. 138(4) it is necessary to prove the alleged defamatory statement was: (1) false; (2) made publicly to a person to whom the accuser has no legitimate excuse to talk about the subject of the accusations; (3) not made in good faith; and (4) made with malice. See Starns v. Starns, 176 La. 610, 146 So. 165 (1933), Flake v. Flake, 163 La. 1022, 113 So. 361 (1927); Homes v. Carrier, 16 La.Ann. 94 (1861); Lamb v. Lamb, supra; Watson v. Watson, 209 So.2d 528 (La.App. 2nd Cir. 1968).
As we have previously discussed, plaintiff's accusations were not totally unfounded and her suspicions were justifiably aroused. However, without regard to truth or falsity, there is no evidence that any statements made to others by the plaintiff were made with malice. Plaintiff, a beautician, apparently confided to her fellow beautician her belief that defendant was dating other women. There is nothing in the record to suggest that this was done with malice or was anything other than one person seeking sympathy or advice from another. A fellow employee of defendant testified that while he was working one day plaintiff came and asked him if "that woman" left. On another occasion as this same individual was walking past the parties' residence, plaintiff asked him "what woman Eugene was talking to." Again, we can discern no evidence of malice on the part of the plaintiff in making these vague inquiries and there is nothing to indicate that plaintiff acted other than in good faith. In view of these facts and circumstances and the applicable law and jurisprudence we find no error in the trial court's failure to find fault on the part of the plaintiff on the grounds of public defamation.
Defendant now contends that the trial court erred in finding that the plaintiff did not have sufficient means for support. Each of the parties submitted income and expense affidavits. Plaintiff listed her total monthly gross income at $200-$300 per month. She furnished no net income figure but this gross income figure most probably represents her net income. She listed her total monthly expenses as $1,205, including her business expenses. She also owes approximately $4,150 for medical treatment and has a judgment against her for $3,232.04 for court costs as the result of an unsuccessful lawsuit. Defendant questions an expense of $165 per month for transportation since plaintiff owns her own automobile. He also argues that plaintiff should not be allowed to claim as a valid expense $200 per month for rent since she admittedly owns a two-bedroom mobile home and the lot upon which it is situated but chooses instead to live in an apartment. He also questions $20 per month listed as an educational expense since that expense is for her two children from a previous marriage.
Even if we subtract from plaintiff's total monthly expenses $200 (for rent), $100 (for transportation), and $20 (educational expenses), she would still have $885 per month in expenses. Defendant argues that a portion of some of these expenses are for plaintiff's children. Plaintiff lists separately $225 per month she receives as child support. She also broke down and separated the portion of rent and utilities attributable to the children. She lists $100 per month as expenses for food and household supplies. Although she does not list separately such expenses attributable to the *73 children, $100 per month seems woefully inadequate to feed two adolescent children and an adult. Even if a portion of these other expenses is attributable to the children, we feel that plaintiff's low income qualifies her as not having sufficient means for support.
Defendant listed his monthly net income as $926.73 and his total monthly expenses as $930.00. Defendant owns his own home. The award by the trial court of $150 per month permanent periodic alimony is well within the limitation imposed by La.C.C. art. 160 that such an award not exceed one-third of defendant's income. A trial court has much discretion in fixing an award of alimony and its determination will not be reversed absent a clear abuse of that discretion. Bass v. Bass, 417 So.2d 67 (La.App. 3rd Cir.1982); Dugas v. Dugas, 428 So.2d 1059 (La.App. 1st Cir.1983). Considering the evidence as a whole we are unable to find any abuse of discretion in the trial court's awarding plaintiff permanent periodic alimony in the amount of $150 per month.
For the reasons assigned, we affirm the judgment of the trial court.
AFFIRMED.