BOWES, Judge,
dissenting.
My dissent in the present case has been wrought, after lengthy consideration and soul-searching, from a diverse appreciation of the law and the jurisprudence as applied to the facts of this case. It is also premised on my opinion as both jurist and civilian observer that the “jambalaya” of positions taken by our courts heretofore in the area of “post-separation fault” is most confusing and, quite simply, fails to keep pace with the realities of contemporary life; still worse, the law today usually permits a husband whose fault is the sole cause of the break-up of the marriage to take a shameful, unfair advantage of a wife whose fault did not contribute to the failure of the marriage. Moreover, this jurisprudence does little or nothing to achieve the presumed legislative intent which is best described as “pro-marriage.”
I respectfully disagree with the finding of my esteemed brothers of the majority that the incident of February 21, 1987, which is the subject of the issue of adultery, had not been judicially determined in the separation proceedings, which took place in the 22nd Judicial District Court for St. Tammany Parish. On the contrary, the trial court there had before it the identical evidence — the one and only incident of alleged adultery occurring on February 21, 1987 — on which the 24th Judicial District Court of Jefferson Parish based its judgment of adultery. The reasons for judgment of the St. Tammany Parish trial judge stated in pertinent part:
There is no evidence that the adulterous conduct of petitioner began prior to the physical separation of the parties. Although a preponderance of the evidence shows that petitioner is guilty of post-physical separation fault, such fault is irrelevant to the determination of fault in this suit for separation.
[[Image here]]
Therefore, the Court finds the defendant [husband] solely at fault in causing the separation.
In my opinion, this judgment has determined the issue of the alleged fault of Mrs. Helms and, in so doing, dismissed Dr. Helms’ reconventional demand with prejudice. That court properly had before it the question of whether Mrs. Helms’ conduct contributed to the breakup of the marriage, and unquestionably concluded that it did not by finding Dr. Helms “solely at fault in causing the separation” — fault so obvious and blatant that he stipulated to it.
The majority, no doubt, hangs their hat, in part, on this phrase used by the trial judge: “Although a preponderance of the evidence shows that petitioner is guilty of post-physical separation fault, such fault is irrelevant to the determination of fault in this suit for separation.” In my opinion, the use of the word “irrelevant” is simply a most unfortunate and careless choice of words and use of language, as it is obvious the trial judge did consider the alleged adultery incident of February 21, 1987. If, as the majority states, Fulmer v. Fulmer, 301 So.2d 622 (La.1974) “bars the re-litigation of fault previously judicially determined”, then the adultery issue in the present case should not have been heard in the subsequent divorce proceedings. The “judicial economy” described in Laurent, infra, is thwarted by re-litigating fault which was allegedly committed prior to a judgment of separation and which was so well known to Dr. Helms that he filed a reconventional demand in order to assert it as a cause of separation in the separation proceedings in St. Tammany Parish.
A judgment of separation in favor of the wife is a judicial determination of the marital fault which caused the judicial separation. As to the pre-separation fault, it should constitute a conclusive determination which equally bars re-liti *510 gation of the issue of fault, when alimony is sought under Article 160, whether the divorce is based either on La.R.S. 9:301 or on 9:302. It should equally bar the husband or the wife from re-litigating such issue. Fulmer v. Fulmer, supra [Emphasis supplied]
The trial court in St. Tammany Parish considered and then rejected the contention that Mrs. Helms was at fault in causing the judicial separation. In my view, the issue of fault relative to the incident in question and the Helms’ marriage was conclusively determined in favor of Mrs.- Helms in the separation proceedings and Dr. Helms should not have been permitted to obtain a divorce in his favor based on the identical incident, particularly after his “forum shopping” trip which resulted in his filing for divorce in a different court from that which tried the separation case — and which still retained jurisdiction over the parties.
Whether the 22nd Judicial District Court erred in its determination is not before us on appeal. Unless that judgment is modified or reversed as to the question of fault, Fulmer, and Fulmer as interpreted in Laurent (by the legendary Judge John C. Boutall, as author), precludes re-litigation of that particular issue.
I am fully aware of the holding in Roberts v. Roberts, 519 So.2d 229 (La.App. 5 Cir.1988), a recent decision of a panel of this court. There, a wife’s adulterous conduct committed subsequent to the physical separation, but prior to the judgment of separation, constituted “post-separation” fault sufficient to deny permanent alimony. However, it certainly appears to me that Roberts is distinguishable on its facts inasmuch as it appears from the opinion that the fault was not litigated in the separation proceedings, but only in the divorce proceedings and so does not constitute the “re-litigation” proscribed by Fulmer. In addition, the judgment of separation and the judgment of divorce were each signed by the same trial judge on the same day.
I am perfectly aware that the question of Mrs. Helms’ right to permanent alimony technically is not before us, as the alimony rule is still pending. But for all practical purposes, the decision we make now in this case decides the right of Mrs. Helms to permanent alimony — so that discussion of this subject is timely now.
Furthermore, while the majority contends that the mainstream cases hold that serious post-separation fault, if proven, precludes permanent alimony, to this writer, there seems to be another most important element involved which has seldom been considered in these cases, and which the majority is not considering now. In Lamb v. Lamb, 460 So.2d 634 (La.App. 3 Cir.1984), the court expressed the following pertinent views:
However, when one party seeks permanent alimony pursuant to La.C.C. art. 160 then fault becomes an issue but only in the determination of whether the party seeking alimony is so entitled. In order to be entitled to permanent alimony, the party who is seeking the alimony has the burden of proving that he or she is without fault in causing the dissolution of the marriage and also that he or she is in necessitous circumstances and in need of support. [Emphasis supplied].
See also Benoit v. Benoit, 466 So.2d 561 (La.App. 5 Cir.1985), in which this court found a wife’s conduct was not “an independent contributory cause of the marriage’s breakdown.”
Likewise, I am aware of our opinion in Schwartz v. Schwartz, 472 So.2d 115 (La.App. 5 Cir.1985), in which a panel of this court stated:
[[Image here]]
the post-separation waiting period of La. R.S. 9:302, is designed to give the spouses a chance to reconcile their differences and resume their marriage. While this statute does not require either spouse to make an effort at reconciliation, neither does it give either of them unbridled license to mistreat, abuse, or otherwise commit outrages on the other which would preclude any possibility of reconciliation. If such actions could have no bearing on the issue of fault for purposes of permanent alimony, a spouse not adjudged at fault in the separation might well be inclined to act vindictively *511 toward the other, secure in the knowledge that his or her right to permanent alimony could not thereby be affected. This would clearly be contrary to the legislative intent in providing a waiting period between separation and divorce.
We emphasize, however, that such fault must not only be serious in nature, but must also be an independent contributory or proximate cause of the final divorce. Boudreaux v. Bou-dreaux, supra, and cases cited therein. [Emphasis supplied]
In my view, the majority seems to completely overlook the holdings of this court in these cases in order to deny Mrs. Helms permanent alimony.
It is the aspects of “fault in causing the dissolution of the marriage” (Lamb) and the “independent contributory or proximate cause of the final divorce” (Boudreaux) that trouble me greatly; and it is in this area that I feel my learned brothers of the majority fall into grievous and serious error.
There is not a single indication of any kind in the record that Mrs. Helms’ alleged post-separation adultery was “a cause in the breakdown of the marriage” or that it was an “independent contributory or proximate cause of the final divorce.” Rather, it seems crystal clear that the breakdown of the marriage occurred solely because of Dr. Helms’ stipulated (and proven) cruel treatment to Mrs. Helms. There is not one iota of evidence that a reconciliation was hoped for, planned, tried or was even possible or wanted from Dr. Helms’ point of view — or that any such possible (or impossible) reconciliation was hopelessly eliminated by Mrs. Helms’ actions. Dr. Helms did not even testify in the divorce proceedings! The effect of Mrs. Helms’ post separation action on Dr. Helms was not a spoiled reconciliation, but only jubilation over the fact that the trap he’d set had worked and an unjust escape by him from permanent alimony that he should pay as a result of a separation that he had already been judicially determined to be the sole cause of!
In my opinion, the purpose of fault finding in determining eligibility for permanent alimony is not to permit one spouse, almost invariably the husband, to escape his alimentary obligations, but rather to encourage the institution of marriage (which is barely surviving these days). The concept of post-separation fault to bar permanent alimony nearly always operates to penalize the wife who is not at fault in the actual breakdown of the marriage. In the typical situation where permanent alimony is at issue, the wife has been found to be free from fault in causing the failure of the marital relationship, and the husband has been found to be at fault. In such cases as these (including the present one), divorce merely puts a technical end to a marriage already destroyed by the party originally at fault.
Therefore, in my view, no purpose is served by denying permanent alimony to a wife under these circumstances — and the prior jurisprudence cited above agrees with this concept.
The practical effect of such decisions as the majority has made here is to permit the husband, who has been found at fault in the separation (and therefore has nothing left to lose) to enjoy post-separation promiscuous and sexual freedom while denying to his (soon to be ex-) wife the right to fall into one human error during the interim period prior to divorce. She must conduct herself with the deportment of a nun, while he is not subject to pay the alimony that he rightfully should, no matter how outrageous or immoral his behavior is. By these statements, I do not mean to advocate extra-marital relations, which I view as fundamentally immoral, but merely to acknowledge how that aspect of human behavior “cuts only one way”, and so unfairly, in the majority’s interpretation of the quagmire of jurisprudence now affecting post-separation fault.
I believe very strongly that situations such as the instant case must be decided on a case-by-case basis and when, as here, the post-separation action of the wife was not a cause of the break-up of the marriage and was not an independent contributory or *512 proximate cause of the final divorce, permanent alimony should not be denied. The law and the courts should not provide a husband, who has already been found solely at fault in the cause of the breakup of the marriage, with the tools with which to extricate himself from paying the permanent alimony which the law and society requires of him as the price of his outrageous conduct and cruel treatment of his wife during the marriage. This is especially true here where the very post-separation conduct of the wife (obtained by a cleverly-set trap), which the husband is using, already has been judicially rejected as a cause of the marriage breakdown.
The issues addressed in this case will very probably be considered by the Louisiana Supreme Court and/or the Legislature of this state. If either body considers that the views taken by the majority herein are technically correct, but that my views expressed above have some merit, then I say to them quite humbly, but frankly, please change the law! In any event, please clarify it!
Accordingly, I respectfully DISSENT.